In Equity.

BATH SAVINGS INSTITUTION

*vs.*

SANFORD L. FOGG, Executor, et al.

Sagadahoc.    Opinion February 21, 1906.

*Savings Bank Deposit.    Interpleader.    Title to Deposit.    Gift.    Delivery.    Trust.*

The Bath Savings Institution filed a bill of interpleader asking that the
defendant Sanford L. Fogg as Executor of the will of Jane Cruikshank, on
the one side, and the defendant Elizabeth Hilliard, a sister of the deceased
testate, on the other side, be required to interplead respecting the owner-
ship of a deposit of $1019.33 standing on the books of the bank with the
following entries, to wit:

"Payable to either,

16982                    BATH SAVINGS INSTITUTION,                    DR.

To Elizabeth Hilliard, Ballycassiddy, Ireland, County of Fermanagh, or
Jane Cruikshank, Bath."

*Held :* that all the attributes of an absolute gift in presenti are wanting.
Although by the terms of the deposit the fund was made payable to either
of the sisters, it was not in fact subject to the disposal of Mrs. Hilliard,
for the reason that Mrs. Cruikshank retained possession of the deposit
book without which withdrawals could not be made.  There was no delivery
of either the deposit itself or of the evidence of the deposit.

It is manifest from the terms of the deposit, the accompanying declarations
and inquiries of Mrs. Cruikshank and her subsequent conduct that she
never had any intention of relinquishing all present and future dominion
and control over this fund.  Her express wish at the time was to have
the deposits made upon terms and conditions that would operate as a
transfer of the fund at her decease.  The evidence discloses no intention
on her part to divest herself of the legal title before that time.  There was
not a perfected gift in her lifetime.

Jane Cruikshank, the deceased testate, never made any declaration of trust
of any kind in favor of her sister, with respect to the deposits in the Bath
Savings Institution, either at the time of making any of the deposits, or
at any subsequent time.  Notwithstanding the repeated suggestion of the
treasurer of the bank that if the depositor wished to make sure that her

sister would receive the fund at her decease it would be advisable to give her notice of the deposit and deliver the book to her or to some person for her, the evidence fails to show that notice of this deposit was ever communicated to Mrs. Hilliard before the decease of the depositor, and affirmatively shows that the deposit book was never sent to Mrs. Hilliard but was kept in the possession of Mrs. Cruikshank or under her control until the time of her decease.

From all the facts and circumstances relating to this deposit, it is further *Held:* that Mrs. Cruikshank's intention was that this gift to her sister should not take effect until after her death, that she withheld from her all knowledge of this special deposit and omitted to forward to her the deposit book solely by reason of an unwillingness on her part to relinquish her control of the fund during her lifetime; that she never intended to create any trust to take effect before her death, and hence that there was no perfected gift of either the legal or the equitable title to the money in question deposited in the Bath Savings Institution and that the fund accordingly belongs to the estate of the testatrix Jane Cruikshank.

In equity.   On report.   Decree according to opinion.

Bill of interpleader brought by the Bath Savings Institution against the defendants to determine the ownership of a deposit of $1019.33 in that bank which deposit had been made by Jane Cruikshank, the deceased testate of the defendant Fogg who as executor of the last will and testament of the deceased claimed the deposit.   Elizabeth Hilliard, a sister of the deceased, also claimed the deposit.

In the court of the first instance, it was decreed "that the defendants named in said bill interplead with each other as therein prayed for, that the plaintiff bank be freed from all demands of said defendants arising out of the controversy therein stated, upon paying over to the party or parties hereafter found by this court to be entitled thereto, the amount in its hands and possession represented by the depositor's book in this suit; that said defendants and each of them be and hereby are enjoined and restrained from instituting any suits, or proceeding against said plaintiff to recover said fund or any part thereof during the pendency of this bill in equity."   It was then "agreed by and between the parties defendant, that the answers which they have already filed may be taken as the pleadings in the case, and the cause set down for hearing on the bill, answers and proofs, and that the said Elizabeth Hilliard be regarded as plaintiff in the continuation of the suit."

After the evidence had been taken out, it was agreed that the case should be reported to the Law Court, and that " upon so much of the testimony as is legally admissible the Law Court is to render such judgment as law and the evidence require."

The case is stated in the opinion.

*George E. Hughes,* for Bath Savings Institution.

*Frank E. Southard,* for Sanford L. Fogg, Executor.

*Charles W. Larrabee,* for Elizabeth Hilliard.

SITTING: WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

WHITEHOUSE, J. This is a bill of interpleader filed by the Bath Savings Institution asking that the defendant Sanford L. Fogg as executor of the will of Jane Cruikshank on the one side and the defendant Elizabeth Hilliard on the other side be required to interplead respecting the ownership of a deposit of $1019.33 standing on the books of the bank with the following entries, to wit:

Payable to either,

16982             Bath Savings Institution,                  Dr.

       To Elizabeth Hilliard, Ballycassiddy, Ireland, County of Fermanagh, or Jane Cruikshank, Bath."

It appears from the allegations in the plaintiff's bill that at the decease of Jane Cruikshank on the third day of May, 1902, this deposit was still in the care and custody of the plaintiff bank and the deposit book therefor was then outstanding; that the defendant Fogg as executor claims that this deposit belonged to Jane Cruikshank in her own right at the time of her decease and became a part of her estate; that the respondent Elizabeth Hilliard claims that the deposit belongs wholly to her and forms no part of the estate of Jane Cruikshank, that the plaintiff is wholly indifferent as between these claimants and is in doubt as to the person or persons to whom the deposit rightfully belongs but holds the same in trust for the proper and legal owner or owners thereof.

Thereupon the contending parties filed their respective answers, the executor Fogg claiming the deposit as a part of the estate in

accordance with the representations in the plaintiff's bill and the defendant Hilliard claiming that the deposit was made for her benefit and became her property at the decease of Jane Cruikshank.

The essential conditions upon which the equitable remedy of interpleader depends having thus been satisfactorily established, the plaintiff's bill was properly sustained and a decree of interpleader duly entered. By agreement the answers filed were to be taken as the pleadings of the contending parties and the case set down for hearing on bill, answers and proofs, "the said Elizabeth Hilliard to be regarded as plaintiff in the continuation of the suit." Upon these pleadings which duly presented the issue between the contending parties the evidence was heard by the presiding justice and reported for the consideration of this court. The parties are now entitled to a decision upon the merits of the controversy between Elizabeth Hilliard and the executor of the estate of Jane Cruikshank upon so much of the evidence as shall be deemed legally admissible. *Savings Bank* v. *Fogg*, 83 Maine, 374; *Savings Bank* v. *Small*, 90 Maine, 546.

It appears from the statement of the account on the bank book in question, that the deposits were made as follows : Dec. 30, 1896, $200; Nov. 21, 1901, $400; Dec. 6, 1901, $300; March 28, 1902, $100. Jane Cruikshank made all of these deposits in person including the last one made about five weeks before she died, and on every occasion she presented the bank book. During the period covered by these deposits she also made seven withdrawals comprising all of the dividends declared prior to her death.

At the time of her death Mrs. Cruikshank was residing in Bath and was 82 years of age. Elizabeth Hilliard was her sister a year or two younger and had always resided in Ireland. Both of them were feeble and blind for a year or more before the death of Mrs. Cruikshank.

It appears from the testimony of Mr. Palmer, the treasurer of the Bath bank, that when Mrs. Cruikshank made the first deposit in December, 1896, she stated to him that she "wished to open an account in her own name and her sister's name, so that either one could draw it, or in case one should die the other would have the

money." Mr. Palmer further testified as follows: "Several times when she was in there she asked me particularly if there would be any trouble if she died about her sister drawing the money. I told her in order to make it perfectly safe I considered that it was proper for her to notify her sister during her lifetime that she had such an account and to place the book in somebody's else possession, whom she could trust who would forward such book to Mrs. Hilliard at her decease." It does not appear, however, that Mrs. Hilliard was ever informed of the deposit in her favor during the lifetime of Mrs. Cruikshank, and it is in evidence that the deposit book remained in her possession until her last sickness when a friendly neighbor took into his custody for safe keeping for a few days, this and one other bank book, two wills and $85 in money. It does not appear that they were taken by her request or that they were to be kept by him for Elizabeth Hilliard, and on the arrival of her nephew John Hetherington, these articles were all returned to Mrs. Cruikshank's house, and remained there until her decease. It further appears that on the thirteenth day of March, 1902, seven weeks before her death, Mrs. Cruikshank made a will in which she bequeathed to her sister Elizabeth Hilliard, the sum of $700, with a special direction that in case of a deficiency of assets, this bequest with one other of $150, should be paid in preference to any other legacies. It is also in testimony from the nephew Hetherington, that Mrs. Cruikshank made a deposit of $800 in a Lynn Savings bank in November, 1901, in her own name "in trust for Elizabeth Hilliard." But the evidence wholly fails to show any connection whatever between this Lynn deposit of 1901 with the Bath deposits in question which commenced five years before and the case is silent as to the final disposition of the Lynn deposit, if it ever existed.

It is not in controversy that the money in question deposited in the Bath Savings bank belonged to Jane Cruikshank at the time of the several deposits mentioned and continued to be her property during the remainder of her life and became a part of her estate at her decease, unless the terms of the deposit, considered in connection with the depositor's declarations and all the circumstances attending the transaction, can be deemed sufficient to show a perfected gift of

the legal or equitable interest in the fund to her sister Elizabeth Hilliard.

It is not claimed in behalf of Mrs. Hilliard, and in view of the foregoing statement of facts it could not reasonably be contended, that the transaction could become effectual as a perfected gift in the lifetime of Mrs. Cruikshank. All of the attributes of an absolute gift in presenti are obviously wanting. Although by the terms of the deposit the fund was made payable to either of the sisters, it was not in fact subject to the disposal of Mrs. Hilliard, for the reason that Mrs. Cruikshank retained possession of the deposit book, without which withdrawals could not be made. There was no delivery of either the deposit itself or of the evidence of the deposit.

Again it is manifest from the terms of the deposit, the accompanying declarations and inquiries of Mrs. Cruikshank and her subsequent conduct, that she never had any intention of relinquishing all present and future dominion and control over this fund. Her express wish at the time was to have the deposits made upon terms and conditions that would operate as a transfer of the fund at her decease. The evidence discloses no intention on her part to divest herself of the legal title before that time. There was not a perfected gift in her lifetime.

But it is insisted that if the transaction did not constitute a gift of the legal title, it was still adequate to create a voluntary trust which had the effect to transfer to Mrs. Hilliard the equitable interest in the fund. It is claimed that Mrs. Cruikshank constituted herself a trustee of this fund for the benefit of Mrs. Hilliard, and that this trust ceased at the death of the former and the legal title then passed to the beneficiary.

The general principle underlying the doctrine of voluntary trusts, and the criterion by which to distinguish an executed trust from an absolute gift as well as from an ineffectual attempt to make a testamentary disposition of property, are thus explained by Mr. Pomeroy in his Equity Jurisprudence.

" A perfect or completed trust is valid and enforceable, although purely voluntary. A voluntary trust which is still executory, incom-

plete, imperfect, or promissory, will neither be enforced nor aided. In order to render the voluntary trust valid and effectual, the party creating it either by direct transfer or by declaration, must have done everything which, according to the nature of the property comprised in it, was necessary to be done in order to transfer the property and render the transaction binding upon him. A person holding property, real or personal, and intending to make a voluntary disposition thereof for the benefit of another, may do so in either one of three modes : (1) He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter whatever interest and title the donor has without the intervention of any trust. (2) He may make a transfer of it to a third person upon trusts declared in favor of the donee. (3) He may retain the title, and declare himself a trustee, for the donee, and thus clothe the donee with the beneficial estate. In either of these modes, if the transaction is imperfect and executory, equity will not aid nor enforce it; and if the intention of the party is to adopt one of the methods, a court of equity will not resort to either of the other methods for the purpose of carrying it into effect. Whenever the party intends to make a transfer directly to the donee, he must do all that is necessary, according to the nature of the property, to pass and vest the title, by valid conveyance in case of real property, and by valid assignment in case of personal property, and generally accompanied by an actual delivery of chattels and things in action where the donor is the legal owner. Where the donor shows an intention to adopt this first method, and thus to vest the property directly in the donee, and the act of donation is simply an assignment of any form, but is imperfect so that it does not pass the title, a court of equity will not treat it as a declaration of trust constituting the donor himself a trustee for the donee; an imperfect voluntary assignment will not be regarded in equity as an agreement to assign for the purpose of raising a trust. If the donor adopts the second or third mode, he need not use any technical words, or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself. It is not essential, however,

that the donor should part with the possession in the cases where he thus creates or declares a trust." 2 Pom. Eq. Sec. 997.

These principles have been carefully reviewed and numerous cases in which they have been involved have been critically distinguished in the recent decisions of this court. *Savings Institution* v. *Hathorn,* 88 Maine, 122; *Savings Bank* v. *Merriam,* 88 Maine, 146; *Savings Institution* v. *Titcomb, Ex'r,* 96 Maine, 62.

In *Savings Bank* v. *Merriam,* 88 Maine, supra, the questions related to the ownership of two deposits of $950 each made in that bank upon the following terms: "Norway Savings Bank in account with Esther S. Reed and Harry Q. Millett or their survivor in joint tenancy." The terms of the second deposit were indentical with those of the first, substituting the name of Myra J. Millett for Harry Q. Millett. Mrs. Reed retained possession of the deposit books and they were found among her private papers at her decease. The beneficiaries had no knowledge of these deposits until after the death of Mrs. Reed. It was held that inasmuch as she never made any declaration of trust, and never by any unequivocal act or expression showed any intention to create one, the transaction must be deemed an ineffectual attempt to make a testamentary disposition of these funds, and not an executed voluntary trust.

In *Noyes et al. Ex'r.* v. *Institution for Savings,* 164 Mass. 583, the account in the deposit book was headed "Annie M. Pike and Mary L. Hewitt, payable to either or survivor." In this case it also appeared that the book was never in the possession of the claimant, Mary L. Hewitt, and that she had no knowledge of the deposit until after the death of the testatrix. No extrinsic evidence appears to have been introduced, and it was held that the deposit remained the property of the original depositor Annie M. Pike.

In the case at bar Jane Cruikshank never made any declaration of trust of any kind in favor of her sister, with respect to the deposits in the Bath Savings Bank, either at the time of making any of the deposits, or at any subsequent time. Notwithstanding the repeated suggestion of the treasurer of the bank that if the depositor wished to make sure that her sister would receive the fund at her decease it would be advisable to give her notice of the deposit and deliver the

book to her or to some person for her, the evidence fails to show that notice of this deposit was ever communicated to Mrs. Hilliard before the decease of the depositor, and affirmatively shows that the deposit book was never sent to Mrs. Hilliard but was kept in the possession of Mrs. Cruikshank or under her control until the time of her decease. It is not indispensable, it is true, that the beneficiary should have notice of the creation of a trust. A complete and valid trust with respect to personal property may undoubtedly be created by an unequivocal declaration of the owner either written or oral, that he holds the property in trust for a specified purpose, without notice to the beneficiary. Neither was it indispensable to the creation of a trust in this case that the deposit book should be delivered to the beneficiary. Indeed the surrender of all dominion and control over the property might have been entirely inconsistent with the purposes of the trust. Even the power of revocation may be perfectly consistent with the creation of a valid trust. *Stone* v. *Hackett,* 12 Gray, 232. Where the owner of property constitutes himself trustee to hold it for the benefit of another, the control of it may properly remain in him who has the legal title.

But the omission of a depositor to give notice to the beneficiary may under some circumstances have great significance as evidence tending to show that there was no intention to create a valid trust, while on the other hand, proof that such notice was given may have a controlling effect in establishing the existence of the trust. So also the retention of the deposit book by the depositor may under some circumstances clearly appear to be in pursuance of a proper execution of the purposes of the trust, and under different circumstances may as clearly appear to be for the depositor's own purpose and benefit.

It appears from the testimony of Mrs. Cruikshank's nephew in the case at bar as above stated that in November, 1901, five years after opening the account at the Bath Savings Bank she made a deposit of $800 in the Lynn Savings Bank with an express declaration of trust in favor of Mrs. Hilliard. Yet she made no request to have the terms of the Bath deposit changed, so that like those of the Lynn deposit, they would unmistakably import a trust for

her sister, but on the 23rd of March made a will bequeathing the sum of $700 to the same sister.

From all the facts and circumstances relating to this deposit the conclusion is irresistible that Mrs. Cruikshank's intention was that this gift to her sister should not take effect until after her death; that she withheld from her all knowledge of this special deposit and omitted to forward to her the deposit book solely by reason of an unwillingness on her part to relinquish her control of the fund during her lifetime; that she never intended to create any trust to take effect before her death, and hence that there was no perfected gift of either the legal or the equitable title to the money in question deposited in the Bath Savings Bank and that the fund accordingly belongs to the estate of the testatrix Jane Cruikshank.

The taxable costs of each of the parties may be paid out of the estate.

*Decree accordingly.*