HUGH McGILLIVRAY, as Administrator of the Estate of Mary J. McGillivray Street, Plaintiff and Respondent, v. FIRST NATIONAL BANK OF DICKINSON, a Banking Corporation, Defendant, and H. E. MONTAGUE, Intervener and Appellant.

(217 N. W. 150.)

**Gifts — delivery to donee.**

1. Mrs. S., whose deposit in a bank was evidenced by certificates of deposit, which were renewed from time to time, caused them upon the last renewal to be issued payable to herself or M. She placed a memorandum signed by herself in her safety deposit box in an envelope addressed to the vice president of the bank and M. The memorandum stated "Money in bank to be disposed of," below which were listed M. and fifteen others with amounts indicated in an opposite column. She had otherwise indicated that if anything happened to her

---

Annotation.— (1) As to necessity of actual delivery of certificate to complete gift of shares of stock, see annotation in 29 L.R.A. (N.S.) 166; 32 L.R.A. (N.S.) 219; 12 R. C. L. 932.

(6) On validity of bequest or devise in trust terms of which are subject to testator's future direction, see annotation in 24 A.L.R. 177.

M. would be notified and that he should open the safety deposit box and would find there the disposition of her property or money. Action by the administrator of the depositor to recover upon the certificates in which M. intervened, asserting a claim as trustee:

To constitute a gift there must be a delivery to the donee.

**Trusts — intention to give property — retains possession and control — question of trusteeship one of intention.**

2. Whether or not a person who has indicated an intention to bestow upon another property of which he retains possession and control becomes a trustee for such other party, is primarily a question of intention.

**Trusts — owner may create trust without change of possession.**

3. An owner may by his own voluntary declaration create a trust of his property for the benefit of a third person without a change of possession and without any consideration.

**Trusts — when trusts will not be inferred — must rest on proof of intention.**

4. A trust will not be inferred from the mere failure of a given transaction to operate as a completed gift but must rest upon substantial proof tending affirmatively to establish an intention to create a trust.

**Trusts — certain acts indicate testamentary intention rather than creation of trust.**

5. Acts and declarations of an owner of property showing an intention to bestow the same upon third parties upon the death of the owner, are consistent with a testamentary intention rather than a desire to create a present trust.

**Trusts — failure of document to operate as will — not evidence of trust.**

6. The failure of a document to operate as a will, if it does so fail, could not add materially to its force as evidence of a trust.

**Wills — when property can be bestowed on others after death — compliance with statute of wills.**

7. Where an owner has indicated a desire to bestow property upon others but has retained an absolute power of disposition during life, and has indicated that the beneficiaries are to take only upon her death, such intended disposition is testamentary in character and can be rendered effective only by compliance with the statute of wills.

**Joint tenancy — bank deposit — joint tenancy not created.**

8. An estate in joint tenancy in a credit resulting from a bank deposit is not created by inserting a donee's name in a certificate of deposit as a joint payee, where full control of the certificate and of the deposit is retained by the depositor.

**Contracts — contract to pay deposit to depositor or to another on death of depositor — not expressly for benefit of third person.**

9. A contract between a bank and a depositor, whereby the bank agrees to pay the amount of the deposit to the depositor, or, upon the death of the depositor, to another, is not a contract made expressly for the benefit of a third person, within § 5841 of the Compiled Laws of 1913.

**Trusts — bank knowing intention of depositor as to distribution of deposit on his death, not trustee.**

10. A bank having knowledge that a depositor intends that the amount of a certain deposit shall be distributed upon the death of the depositor to a certain beneficiary or beneficiaries, one of whom is made joint payee of a certificate of deposit, remains a debtor and does not become a trustee for the benefit of such third party or parties.

Opinion filed November 30, 1927.

Contracts, 13 C. J. § 817 p. 709 n. 29.  Gifts, 28 C. J. § 21 p. 630 n. 66; § 132 p. 701 n. 69.  Joint Tenancy, 33 C. J. § 9 p. 907 n 7.  Trusts, 39 Cyc. p. 46 n. 53; p. 66 n. 67; p. 70 n. 84; p. 86 n. 78; p. 111 n. 53; p. 112 n. 54 New.  Wills, 40 Cyc. p. 1091 n. 95.

Appeal from the District Court of Stark County, *Pugh,* J.
Affirmed.

*Newton, Dullam & Young,* and *Simpson & Mackoff,* for appellant.

Where a trust is declared by a memorandum it is not essential that the memorandum be delivered to anyone as a declaration of a trust where the fact of declaration is made known.  Gaffney's Estate, 146 Pa. 49.

A trust fund in a bank may be established by parol proof.  Harris Bkg. Co. v. Miller (Mo.) 1 L.R.A.(N.S.) 790; Berry v. Evendon, 14 N. D. 1, 103 N. W. 748.

A trust is sustained although there is not a sufficient delivery, or divesting the donor of his control over the fund to constitute a gift. Booth v. Oakland Bank of Savings, 122 Cal. 19, 54 Pac. 370; Robinson v. Mutual Sav. Bank, 7 Cal. App. 642, 95 Pac. 533; Hoboken Bank for Sav. v. Schwoon, 62 N. J. Eq. 503, 50 Atl. 490.

"All the declarations of the trustor made to the trustee in relation to the trust, before its acceptance, save and except where the trust is declared in writing, are deemed part of the declaration of trust." Drinkhouse v. German Sav. & L. Soc. 17 Cal. App. 162, 118 Pac. 953.

Declaration of trust need not be in one instrument which transfers the legal title, but may be set out in separate instruments, or several papers, provided they are related and connected with each other, and when construed together, evidence existence of a trust. 39 Cyc. 53, § 3.

Memoranda among decedent's papers are sufficient to satisfy even the statute of frauds. 39 Cyc. 56.

Subsequent declarations may be used to show trust. 39 Cyc. 61.

Knowledge of deposit by beneficiaries is not necessary. 39 Cyc. 70, note 87.

*L. R. Baird,* for defendant, First National Bank.

*Crawford, Cain & Burnett,* for respondent.

It is a well-recognized principle of law that certificates of deposit in the ordinary form are, in substance and legal effect, promissory notes, and where such certificates are negotiable, their transfer is governed by rules that apply to promissory notes. 7 C. J. 647, ¶ 336; Hillsinger v. Georgia R. R. Bank, 75 Am. St. Rep. 43.

Where the holder of the certificate is dead, the payee cannot recover the deposit when the certificate is in the hands of the representative of the deceased, claiming title to it. Reed v. Marine Bank, 136 N. Y. 454, 7 Am. St. Rep. 57, note; Smith's Estate, 27 Am. St. Rep. 64, 144 Pac. 428.

"A joint deposit in the name of the depositor and another though coupled with a statement that the survivor of them shall take the deposit is not of itself a sufficient declaration of trust." 3 R. C. L. 258, ¶ 208; Hillsinger v. Georgia R. R. Bank, supra.

There must be clear evidence of an intention to transfer a present interest to the cestui que trust. Mathias v. Fowler, 124 Md. 655.

"A trust is not created where the depositor merely intended the property to go to the codepositor upon his surviving the depositor but did not intend to vest in the codepositor any present interest." Norway Sav. Bank v. Merriam, 88 Me. 146, 33 Atl. 840; Calmary v. Flannagan, 124 Md. 548, 92 Atl. 1045.

The mere secret memorandum by the donor that he holds certain property in trust will not be sufficient. Kendrick v. Ray, 173 Mass. 305, 73 Am. St. Rep. 289, 53 N. E. 823; Janes v. Falk, 50 N. J. Eq. 468, 35 Am. St. Rep. 783, 26 Atl. 138.

It is necessary to create a trust that the same be created with reasonable certainty and that any trust that is uncertain cannot be enforced by law because it is undetermined, and the law would have to define what the trust was before it could be enforced. Coyne v. Supreme Conclave, 106 Md. 54, 66 Atl. 704; Loring v. Hildreth, 170 Mass. 328, 49 N. E. 652.

"If the gift be imperfect and something remains to be done by the donor to perfect an intention to make a gift or create a trust, a court of equity leaves the parties where it finds them. It will not aid in completing an incomplete transaction or in enforcing that which rests only in an unexecuted intention." Reel v. Hansboro, 52 N. D. 182, 201 N. W. 861.

"A fundamental essential to the existence of any trust is the separation of the legal estate from the beneficial enjoyment; and no trust can exist where the same person possesses both." Doan v. Parish of Ascension, 103 Md. 662, 64 Atl. 314.

BIRDZELL, Ch. J. Mary J. McGillivray Street died in the year 1924 at the age of seventy-five years and left surviving her second husband, to whom she had been married approximately two years; also, a sister and other relatives farther removed. Her death was the result of an automobile accident. For a number of years prior to her death she had money on deposit in the First National Bank of Dickinson, the original deposits representing the proceeds of the sale of ranch property left her by her first husband. The deposits accumulated and were evidenced by certificates issued and renewed from time to time. At the time of her death there were five such certificates amounting, without interest, to $48,500. The last renewal of these certificates had taken place in September, 1923, at which time she indicated to the cashier of the bank her desire to renew them in such a way as to make them payable to herself or H. E. Montague. They were renewed in this form and placed in her safety deposit box in the vault of the bank. After her death the certificates were found in the box and there was also found a memorandum enclosed in an unsealed envelope. On the address side of the envelope was written "For R. H. Johnson and Claud Montague." The enclosed memorandum is as follows:

Money in bank to be disposed of

| | |
|---|---:|
| H. E. Montague | $10,000 |
| Maria Wheat | 10,000 |
| Willetta McGlashan | 3,000 |
| Marian McGlashan | 3,000 |
| William Wheat | 2,000 |
| Charles Wheat | 2,000 |
| Fred Wheat | 2,000 |
| Watson Wheat | 2,000 |
| Florence Griffith | 2,000 |
| Mary Jane Griffith | 1,500 |
| Richard Griffith, Junior | 1,000 |
| Norman Montague | 3,000 |
| Richard Montague | 2,000 |
| Hamilton Montague | 2,000 |
| Mary Currier | 1,000 |
| Donald Montague and Donald the Ranch | 2,000 |

Mary J. McGillivray Street,
Oct., 1923.

Hugh McGillivray was appointed administrator of the estate of Mary J. McGillivray Street, deceased, and brought action against the bank upon the certificates of deposit. The bank answered, admitting its indebtedness but alleging the above facts with regard to the memorandum, and asking that the court determine whether or not the administrator was entitled to recover the proceeds or whether the same should be paid in accordance with the direction contained in the memorandum. It asked to be permitted to deposit the money in court for the benefit of the parties entitled.

H. E. Montague filed a complaint in intervention, pleading the execution of the certificates and alleging that he was the duly appointed, qualified and acting trustee for the benefit of himself and the other beneficiaries named in the memorandum. He prayed judgment against both the plaintiff and the defendant, requiring the delivery of the certificates to the intervener and their payment to him. From a judgment of dismissal entered against the intervener and a judgment in favor of the administrator against the bank, the intervener appeals.

The evidence, aside from the documents referred to above, is substantially as follows: R. H. Johnson, cashier of the defendant bank, testified that prior to the last renewal of the certificates they had been payable to Mary J. McGillivray Street; that at the time the last renewals were made, at the direction of the deceased he made them payable to the deceased or to H. E. Montague; that he was not shown the memorandum at such time and never saw it until after the death of Mrs. Street when the safety deposit box was opened; and that at the time they were drawn up she made no statement that he could remember definitely. He describes the transaction in this manner: "I might say that she came into the bank and asked for her box, and I went and got the box and she sat down at the desk just outside of the counter, and after awhile she says, 'I guess I'll have my certificates renewed.' And she had them out there, and she says 'I want them made in my name, payable to myself or H. E. Montague. I want them made out that way this time.' " He could remember no explanation of the change. The witness remembered that the deceased at one time came to his home and said that she was going to take care of Mr. Montague when she died—that was during the last year of her life—and that he understood it was her intention to have them payable to Mr. Montague in case of her death. The deceased did not discuss her business freely with the witness and was quite secretive about all her business matters.

The county judge testified that, after the death of the deceased and at the request of heirs and parties interested in the estate, he went to the First National Bank to examine the contents of the safety deposit box. A seal had previously been placed over the box. He opened it and found the certificates of deposit in question in an envelope in the box. He also found the memorandum. They were not included in the same envelope. He did not remember whether the memorandum was found next to the certificates of deposit.

H. E. Montague testified that the deceased had been a frequent visitor in his home and lived at his home "off and on." He lived in San Diego, California, and it had been the custom of the deceased for a number of years to spend the winter months in California. The deceased owned property in San Diego which was looked after by Montague, and she frequently consulted him regarding her business transactions. He and his family had visited her in Dickinson upon her

cordial invitation, accompanied by a check for $400 to pay railroad
fare. While in Dickinson on this occasion she spoke to the witness
about the money in the bank. To use his words, "She said if anything
should happen to her I would be notified, and to come up here and to
open her safety deposit box and I would find there the dissolution
(disposition?) of the property or the money." He said she had never
advised him concerning the state of the certificates nor how she had
left them.

Mrs. DeLendrecie of Los Angeles, California, testified that she had
known the deceased for fifteen or twenty years and was on intimate
terms with her. The deceased often consulted her about her affairs
and she thought Mrs. Street often told her about all her affairs. She
had a conversation with the deceased in May, 1924, the day before the
deceased left California for her home in Dickinson, at the home of the
witness in Los Angeles. No one was present but Mrs. Street and the
witness. The deceased told the witness that she had certificates of
deposit in the bank at Dickinson and that "Claude" (the name by
which H. E. Montague was known) knew about the certificates and
that he was to attend to everything for her. He knew what disposition
was to be made of the certificates. She remembered very distinctly
that the deceased had said that he was to distribute the money to her
sister, Mrs. Wheat, and to other relatives that Claude knew of, and she
made a statement with regard to having left a list in the bank. "She
said that the money would all be found to be distributed to her sister
and Claude—Claude knew who they were—I don't recall just who
she mentioned, but that Claude knew who they were; and that it was
plain to me that Claude was able to make distribution; and it was left
to his judgment to do it—he knew what she desired it to be. . . .
I am just thinking—wait a minute—she was very particular about her
sister—I recall that exactly, but I don't recall the names of anybody
else that it was left with that she referred to in this matter but her
sister she referred to particularly; and she said that in the bank in
Dickinson, the papers were all there which Claude would receive; and
Claude—I always knew him as Claude—that Claude knew all about
them, and he would see to them being administered as she had written
and desired that they should be."

It is clear from this evidence that the deceased did not in her lifetime

complete a gift of the certificates to her nephew, H. E. Montague. She at no time made any delivery of them to him, either actual or constructive. She retained at all times possession of the certificates and possession of the key to the safety deposit box, thus keeping control of them. She at no time indicated to any person the amount she intended Montague to receive, and the same is true of her sister and the other persons named in the memorandum; nor did she in any manner communicate the contents of the memorandum to any person. Had she lived she could have had the certificates renewed, payable to any person designated by her, without infringing any right of Montague or of any other person; likewise she could have changed the memorandum as often as she liked without affecting the rights of any beneficiary named in a prior published document. If Montague should take, or the administrator be charged, according to the terms of any memorandum, it would be whatever memorandum would be found after the death of the donor or settlor. These conclusions are obviously consistent with the intention of the deceased as indicated by her acts in keeping control of the certificates and her expressions with reference to disposition upon her death (not before) according to papers that would then be found in the bank.

While certain declarations and acts indicated that the deceased entertained an intention that upon her death all or certain of the property in question should pass to individuals who would not take it under the law of succession, it is apparent that there were no circumstances present which would be required in order to give effect to that intention as a gift in view of death within the statute (Comp. Laws 1913, § 5541). Neither can the disposition be upheld as a testamentary disposition, since there is no attempt to support the memorandum as a will; so, the case resolves to the single question as to whether or not a valid trust was created, of which the intervener and beneficiaries named in the memorandum are cestuis, or of which the intervener is both trustee and a cestui que trust.

The money unquestionably belonged to the deceased. She did nothing to divest herself of the use or absolute control of it, except to request that the certificates of deposit be made payable to herself or Montague. See Sherman v. New Bedford Five Cents Sav. Bank, 138 Mass. 581. There was no subsequent act giving him any measure of control

over the deposit and hence he did not in the lifetime of the depositor become a trustee. The same circumstance, namely the lack of delivery, which prevents the transaction from operating as a gift inter vivos, likewise prevents Montague from becoming a trustee; but the important question is not who became trustee but whether or not a trust was in fact created. This, as has heretofore been remarked, is primarily a question of intention. Real v. Hansboro State Bank, 52 N. D. 182, 201 N. W. 861.

Since Lord Eldon's decision in Ex parte Pye, 18 Ves. Jr. 140, 34 Eng. Reprint, 271, it has become almost universal law that an owner of property may by his own voluntary declaration create a trust of that property without a change of possession and without any consideration. 1 Perry, Trusts, 6th ed. § 96. But, where there is no consideration and the expression of the declarant is equivocal, or the transaction executory, equity will not lend its aid to enable the proposed beneficiary to reap the reward. It is essential, therefore, that such a trust be perfectly created. A gift which is rendered inoperative for lack of delivery of the subject matter can not be considered as a trust and supported as such in every instance. The intention to create a trust must rest upon substantial proof tending affirmatively to establish it; it is not to be inferred from the mere failure, though for somewhat technical reasons, of an intended benefaction. Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634. Did the deceased, in the instant case, evince an intention to hold the property in question in trust for others? We do not think so. Her acts and expressions are all to the contrary; they consistently indicate a purpose on her part to keep absolute control of the property with the right to enjoy it as she will during her life, and that no beneficiaries are to have any interest until she should die. Certainly, during her lifetime no one was in a posistion to question any use or disposition that would have suited her fancy. Her expressions are all to the effect that Montague, her sister and others would be taken care of *upon her death,* and that directions would be found in a certain place indicating what to do with the property that she would leave; and the direction that was found negatived a past disposition, the words employed being "to be disposed of."

Furthermore, the memorandum, which is the strongest bit of evidence

in support of the intervener's claim, contains as specific a declaration
to the effect that Donald shall have the ranch property as that he or
any other beneficiary shall have a specific amount of money which had
been deposited in the bank; and, if the memorandum evidences a trust
of the bank deposit, it is difficult to escape the conclusion that it like-
wise evidences a trust of the ranch property. The declaration is in
writing and is subscribed by the trustee and hence, if otherwise suffi-
cient, satisfies the statute of frauds. Comp. Laws of 1913, § 5364.
Section 5364, Compiled Laws of 1913 contains an obvious misprint;
the statute is correctly printed in § 4821, Revised Codes of 1905. So
far as our researches have extended, no authorities have been found
that would support a trust of real property on so slender a declaration
by the owner as exists in this case—a mere statement in writing that
a certain individual is to have the property, found after the death of
the owner among the valuable papers of the deceased and explained
only by parol evidence indicative of a testamentary intention. There
can be no sound reason for distinguishing between a trust of personal
property and a trust of real property in the matter of the intention to
create it. They are equally dependent upon the intention to create. All
of the expressions and directions bearing upon the disposition of the
property in the instant case are appropriate to a testamentary dis-
position, rather than to a trust, and when all are considered together
it seems to us that the conclusion is inescapable, that the deceased really
intended the disposition as a testamentary one and doubtless believed
that she had done all that was necessary to give effect to her testa-
mentary intention. Whether or not she had made a valid will is a
matter that we can not properly decide in this case, and we therefore
express no opinion upon it. The failure of the document to operate as
a will, if it does so fail, would not add materially to its force as evidence
of a trust. 1 Perry, Trusts, 6th ed. § 97. We are of the opinion that
there is lacking here proof of an intention to create a trust.

But it is argued that by having the certificates made payable to her-
self or Montague and by executing the memorandum, she clearly indi-
cated a purpose to hold the certificates for the benefit of the persons
named and that, since the law is more concerned with the substance or
the legal effect of her act than with any words she might have employed
or omitted, the fact that she did not declare herself a trustee is not

important; nor, it is urged, is it particularly significant that she retained the power of revocation, as the validity of a trust may not be affected by a reservation of the power of revocation. Kelly v. Parker, 181 Ill. 49, 54 N. E. 615; Kelley v. Snow, 185 Mass. 288, 70 N. E. 89; McEvoy v. Boston Five Cents Sav. Bank, 201 Mass. 50, 87 N. E. 465; Seaman v. Harmon, 192 Mass. 5, 78 N. E. 301; Stone v. Hackett, 12 Gray, 227; Brown v. Spohr, 87 App. Div. 522, 84 N. Y. Supp. 995; Robb v. Washington & J. College, 185 N. Y. 485, 78 N. E. 359; Schreyer v. Schreyer, 101 App. Div. 456, 91 N. Y. Supp. 1065; Rynd v. Baker, 193 Pa. 486, 44 Atl. 551; and other cases involving bank deposits to be hereinafter cited and considered. It is pointed out that, if such a power was reserved in the instant case, it was never exercised.

It is indeed difficult to see wherein the deceased during her lifetime had taken any steps that in the slightest degree qualified her dominion, control, use or beneficial enjoyment of the property in question. Clearly, she was just as free to enjoy it as she would have been had she made a will expressing the same intention as that embodied in the memorandum. But, construing the memorandum as a deed of settlement, "It," to use the language of the Supreme Court of Massachusetts in the case of McEvoy v. Boston Five Cents Sav. Bank, 201 Mass. at page 54, 87 N. E. 465, "left her (the settlor) the sole beneficial owner of it, with an absolute power of disposition as long as she lived. As against her, therefore, the only practical effect of the instrument during her lifetime was to give the trustee (in the case at bar, herself) a right to collect and hold the property until she should ask for it. Her rights as beneficial owner during her life were not limited in any material way. She could revoke the trust at any time, or she could demand and receive from the trustee (herself, in the instant case) all the money, at any time, under the trust, and then do with it as she chose." In that case it was held that an attempted disposition of specific property by a transfer to a trustee upon trust to pay to the settlor as demanded and to make certain payments upon the death of the settlor and thereafter to pay stipulated amounts to certain beneficiaries with a reservation of the right to revoke, was testamentary and could not be given effect except as a will.

The case was distinguished from Kelley v. Snow, 185 Mass. 288, 70 N. E. 89, where the settlor retained a beneficial use extending to the

income during her life and retained a power of appointment under which the beneficiaries of the trust could be changed by giving notice in writing to the trustee, the court saying (page 54) : "While she had a power by the writing to change the disposition of what remained after her death, she could not diminish the property which necessarily would pass to others under the trust." See, also, Stone v. Hackett, supra. In the case at bar the legal title never passed out of the settlor as in the Massachusetts cases, nor did she in any manner restrict her power of disposition by will or otherwise. If it be conceded that any trust of property which would be valid if created by will can be created by the owner in his lifetime (see Gilman v. McArdle, 99 N. Y. 451, 52 Am. Rep. 41, 2 N. E. 464; Green v. Tulane, 52 N. J. Eq. 169, 28 Atl. 9), it would be necessary to fix a time in the life of the settlor when such trust went into operation. In this case such time could not be fixed without disregarding expressions of the settlor which showed that the disposition was to be governed by papers that would not be found until after her death. For this purpose a will would clearly have been efficacious. Hence, there was no time prior to her death that the property could have been held to be charged with a trust in favor of any particular beneficiary, and it seems to us apparent that the deceased at all times had in contemplation merely a testamentary disposition.

In Brown v. Crafts, 98 Me. 40, 56 Atl. 213, where a donor made a gift of property to his daughter (satisfying every legal requirement to make a valid gift), at the same time taking back a power of attorney giving him full control with the right of disposition, it was held that the transaction was colorable, not real, the court saying, at page 45 : "This attempted transfer, having the semblance of a gift but the substance of a will, was nugatory." Where, as here, the facts show an intended testamentary disposition and the right of revocation is broad enough to permit the donor to continue to enjoy all the rights of an owner, he has in fact transferred nothing. To the extent that the persons named as beneficiaries obtain the rights of an owner, they must necessarily obtain them through a testamentary disposition and not through a trust.

The appellants cite, as authorities sustaining their contention that a trust was in fact created, a number of cases, principally from California, in which settlements of bank deposits have been upheld in favor

of donees where the donor had indicated a desire to have the deposit payable to himself or the donee and taken steps to enable the donee to obtain the money from the bank, either during their joint lives or as a survivor. These cases, in our opinion, approach more nearly to authority for the position of the appellant than any others presented upon the brief, and we feel that we would not be justified in disposing of the case without a careful consideration of these decisions.

In many of the cases involving bank deposits, such as Sayre v. Weil, 94 Ala. 466, 15 L.R.A. 544, 10 So. 546; Gaffney's Estate, 146 Pa. 49, 23 Atl. 163; Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446; and Atkinson's Petition, 16 R. I. 413, 3 L.R.A. 392, 27 Am. St. Rep. 745, 16 Atl. 712, where the deposits were specifically designated as being in trust for named beneficiaries, the intention of the donor to constitute himself the trustee being clearly expressed, the difficulties in the way of recognizing the trust relation may be only such as result from the failure to pass to the beneficiary the evidence of the ownership of the account, such as the savings bank book, etc. And this is a difficulty that may well be overcome in view of the propriety of the trustee retaining the legal title and control. Where the declaration is thus unequivocal, it may properly be assumed that the trustee's subsequent exercise of control, as by partial withdrawal, is consistent with the trust declared, rather than in derogation of it; and that it is a proper exercise of his powers as a trustee and not inconsistent with the rights of the cestui que trust (Bath Sav. Inst. v. Hathorn, 88 Me. 122, 32 L.R.A. 377, 51 Am. St. Rep. 382, 33 Atl. 836), or there may be a completed gift inter vivos. Scrivens v. North Easton Sav. Bank, 166 Mass. 255, 44 N. E. 251. Cases of this character, therefore, afford little or no assistance in determining a case such as the present. Cases of joint deposit, where the right of the survivor to the money may depend more upon considerations of status of husband and wife than upon the question of the creation of a trust of the deposit, are equally beside the question. Sprague v. Walton, 145 Cal. 232, 78 Pac. 646; Crowley v. Savings Union Bank & T. Co. 30 Cal. App. 144, 157 Pac. 516; Blick v. Cockins, 252 Pa. 56, 97 Atl. 125; West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493.

In other cases, however, where the deposit is made to the credit of two or more persons jointly, payable to either or to the survivor, their

names being linked either conjunctively or disjunctively, and where the owner of the fund so deposited has clearly signified a willingness to permit the other to withdraw the whole or any part of the moneys, either before or after the donor's death, the facts are more closely analogous to the facts in the case at bar, and the principles controlling the decisions merit attention. Owing to the number of such cases, it is, of course, impossible within an opinion of reasonable length to abstract the holdings in all of them. We therefore select such of them as may have been specially relied upon, or as are typical of the class, for examination in this connection.

In Booth v. Oakland Bank of Sav. 122 Cal. 19, 54 Pac. 370, Mrs. Bell, a savings depositor, notified the bank that she was desirous of adding to her account the names of her sisters, so that in the event of her death they could draw the money without probate proceedings. To that end she signed an instrument directing the bank to pay to her or either of her two sisters, whose signatures were furnished and pasted in the signature book and whose names were added to the pass book, being told at the time that they could draw the money in her lifetime. To this she assented but said that they would not do it. She informed her sisters as to what she had done, telling them, however, that the money could not be drawn without an order from her but could be withdrawn by them in the event of her death. The court held that a trust was created and that it was not affected by the circumstance that the depositor retained the power to withdraw the deposit, even for her own use.

In the case of Carr v. Carr, 15 Cal. App. 480, 115 Pac. 261, the savings depositor, Michael Carr, in the presence of his son, M. K. Carr, caused the bank to change the deposit to the names of Michael Carr, or M. K. Carr, as joint owners, payable to either or survivor. The depositor agreed with the bank that the account could be paid to either during the lifetime of the depositor or after his death to M. K. Carr. The court held that the transaction lacked the essential elements of a gift, either inter vivos or causa mortis, but further held that the bank became a trustee of the money for the purposes of the trust, as indicated by the agreement made, and that after the death of Michael Carr, M. K. Carr was entitled to an award of the balance in the bank as against the administrator of the deceased depositor.

In Drinkhouse v. German Sav. & L. Soc. 17 Cal. App. 162, 118 Pac. 953, the depositor opened two accounts in the bank in the name of "Elizabeth Thomsen or Louisa H. Wilson." Bank books so indicating were delivered to the depositor, Mrs. Thomsen, in the presence of Mrs. Wilson. The depositor told the bank clerk that she desired to "sign over" to Mrs. Wilson whatever money she had in the accounts, so that if anything happened to her Mrs. Wilson could take the pass books and go to the bank and draw the money. Mrs. Thomsen, upon leaving the bank, gave the pass books to Mrs. Wilson, but later in the day she repossessed them and placed them in a trunk. About ten months thereafter Mrs. Thomsen died with the books still in her possession. Mrs. Wilson, however, took the books to the bank and withdrew the full amount deposited. The action was by the administrator to recover of the bank. The court held that there was not a completed gift of the fund, but further held that the bank was a trustee and had fulfilled the purposes of the trust as declared at its creation. Culver v. Lompoc Valley Sav. Bank, 22 Cal. App. 379, 134 Pac. 355, is to like effect. See also Re De Rome, 175 Cal. 399, 165 Pac. 919; Mellor v. Rideout, — Cal. App. —, 257 Pac. 173.

In McCarthy v. Holland, 30 Cal. App. 495, 158 Pac. 1045, the owner of a deposit when seriously ill wrote a letter to the bank directing it to transfer her account to the names of herself or Mrs. McCarthy, payable to either or the survivor, stating to those present that she wanted Mrs. McCarthy to have the money. She gave her the pass book and on the following day Mrs. McCarthy took the letter and the deposit book to the bank and had the deposit changed, obtaining a new pass book which the original depositor told her to keep. On the same day Mrs. McCarthy withdrew $500, which she applied to her own uses with the knowledge and concurrence of the original depositor. The following month the depositor died. The court held that the case was controlled by the principles of the Booth and Drinkhouse Cases, supra, and expressed the further opinion that the change in the deposit made the joint depositors joint tenants with the right of survivorship, carrying the title to the whole of the deposit.

In Chippendale v. North Adams Sav. Bank, 222 Mass. 499, 111 N. E. 371, the owner of the original savings deposits caused to be inserted in each of the deposit books a slip to the effect that the account

should be also payable to Abbie Worthington and that either party or the survivor of them might draw the whole or any part then or thereafter deposited, and furnished an identification card to the bank. In another bank the books of the depositor were made to recite that the account might be drawn by his sister, Abbie Worthington. The latter likewise signed the by-laws of this bank and furnished a depositor's identification. All the books were placed in the depositor's tin box, upon which, at the direction of the depositor, there was pasted this label "Property of Abbie Worthington." The tin box was left in the bank for safekeeping with an agreement that both the depositor and Mrs. Worthington should have access, both having keys. Mrs. Worthington likewise held a receipt for the box. Thereafter the original depositor withdrew some money from each of the accounts but in each case he returned the books to the box. In an action brought by Williams, administrator of the depositor, to obtain possession of the tin box, it was held that the right to the books and the right to the money on deposit were governed by the terms of the contracts entered into by the banks and that accordingly Mrs. Worthington took as survivor in the same way that a joint tenant takes as survivor where land has been conveyed in joint tenancy, but that there was no *gift* of the balance upon the death of the depositor.

In Hoboken Bank for Sav. v. Schwoon, 62 N. J. Eq. 503, 50 Atl. 490, a deposit of $4,400 was made in the bank to the credit of "Helena Roche or Hy Schwoon, payable to either or survivor." The account had been so placed at the direction of Helena Roche and in the presence of Schwoon. At the same time she signed a contract whereby she agreed that either of the parties or the survivor might draw the whole or any part of the moneys. It was held that the direction amounted to a complete declaration of trust.

In Harris Bkg. Co. v. Miller, 190 Mo. 640, 1 L.R.A.(N.S.) 790, 89 S. W. 629, where a depositor indorsed to another a certificate of deposit, notifying both the bank and the indorsee that he held the certificate for the indorsee but retained the right to use the income during his life, it was held that a valid trust was created.

In Deal v. Merchants & M. Sav. Bank (Parrish v. Merchants & M. Sav. Bank) 120 Va. 297, L.R.A.1917C, 548, 91 S. E. 135, the depositor placed money in the bank in the name of herself or Ellen Holland, it

being explained at the time that either of the parties could draw the money at any time but that it was necessary to bring the pass book. After the death of the depositor Mrs. Holland produced the pass book and the deposit was changed to her name. The court held, quoting with approval from the case of Chippendale v. North Adams Sav. Bank, supra, that the contract relation between the bank and two joint depositors had the effect of giving to the survivor the property right in the deposit, saying "It was a pure contractual relation, and no question of gift or trust arises in determining the rights of the parties under such a contract."

See also Cleveland Trust Co. v. Scobie, 114 Ohio St. 241, 48 A.L.R. 182, 151 N. E. 373.

In a supplementary brief counsel cite and rely specially upon Coburn v. Shilling, 138 Md. 177, 113 Atl. 761. This case, as we read it, merely holds that the act of a depositor, in changing his account so as to make it payable to himself and another, presumptively creates a trust but that the presumption may be rebutted. It was held to be rebutted in that case.

We are not concerned here with any question as to whether or not a bank paying the survivor of one of two or more joint tenants according to the terms of a contract may be liable over to the administrator of the original owner. Battles v. Millbury Sav. Bank, 250 Mass. 180, 145 N. E. 55; Godwin v. Godwin, 141 Miss. 633, 107 So. 13. We are concerned, rather, with the question of ownership as between the conflicting claimants, the estate of the deceased on the one hand and one designated as a joint payee on the other. If this designation, under the circumstances shown here, had the effect of making him a joint tenant, as it were, of the deposit, then he and the depositor were thereafter seized of an undivided moiety of the whole (7 R. C. L. 812) ; and, the incident of survivorship attaching, he would succeed to the ownership upon the death of his co-tenant. Upon this theory the Massachusetts and Virginia cases, supra, uphold the right of a survivor on grounds of contract and jointly tenancy wholly independent of the question of a trust or a gift. Whether these decisions suggest a satisfactory basis upon which to determine the rights of the "joint tenants" inter sese during the lives of both—as, for instance, where the donee tenant might have wrongfully withdrawn the whole fund or a moiety—we need not consider here. Suf-

fice it to say that before the doctrine of such cases can be applied, it is essential either that there shall have been created during the lifetime of the deceased an estate in joint tenancy, or that there shall have been a contract relation between the depositor, the bank and the third party, under which rights have become vested in the third party. Obviously, in the instant case the complete ownership of the fund remained in Mrs. Street until her death, nothing having been done prior thereto sufficient in law to have vested an estate in joint tenancy in Montague or any other beneficiary. There was no gift and no completed transfer; neither was there any contract with Montague. Nor can the contract between the bank and Mrs. Street be regarded as one made expressly for the benefit of a third person within § 5841 of the Compiled Laws of 1913, for it was manifestly for the benefit of Mrs. Street. Even if this contract be deemed to contain a promise to pay to Montague for distribution whatever should be on deposit upon the death of Mrs. Street and he be regarded as the sole legal, though not equitable, beneficiary of such promise, he could not sue unless oral wills are to be recognized. These cases, therefore, do not support the claim of the appellant and it must rest upon the sole ground urged, namely, upon the ground that a trust was created.

In the cases above, in which the right of the survivor was upheld on the theory that a trust was created by the depositor, it will be seen that in practically all of them a power, at least (as distinguished from a right), was recognized in the beneficiary during the life of the depositor to exercise control over the deposit or to withdraw it, or there was a contract relation with the bank in which definite rights of a beneficiary were recognized; whereas, in the instant case the control of the deposit was at all times solely with the deceased and was wholly dependent upon the possession of the certificate. There is no evidence of any intention to surrender to or share this possession with Montague or any other beneficiary. Montague's beneficial interest was not to be that of a joint tenant with the deceased. The amount of his ultimate interest was subject to the same uncertainty as that of any other contemplated beneficiary and even the persons to be favorably affected were likewise unknown and subject to inclusion or exclusion at the will of the depositor. The deceased admitted no one on an equal basis with herself. So,

even should the authority of those cases be recognized, the facts in the present case are sufficiently at variance to warrant a distinction.

The strongest analogy, in our opinion, is found in those cases in which the bank is said to become the trustee to carry out the trust according to the terms fixed by the deceased. But it is difficult to understand how the debtor becomes a trustee. Does it cease to be a debtor? Do the other incidents of the trust relation immediately attach? As we view the matter there is little authority for such an easy shifting of a debtor and creditor relation to that of trustee and cestui que trust in order to effect a given legal result—a result that may be reached by perfectly legal means through compliance with safeguards dictated by experience in the interest of the safe and orderly distribution of property. Sullivan v. Sullivan, 161 N. Y. 554, 56 N. E. 116. Our law is sufficiently elastic to allow third parties for whose express benefit a contract is made to sue upon it in proper cases; consequently, a holding that a debtor by agreeing to pay a third party in a certain contingency becomes a trustee, may not be justified as a means of circumventing an archaic, inelastic legal conception. See 1 Williston, Contr. § 360; Moore v. Darton, 4 De J. & S. 517, 64 Eng. Reprint, 938; M'Fadden v. Jenkyns, 1 Phillch. 153, 41 Eng. Reprint, 589. Still another approach to an analogous situation may be found in New York where a doctrine of *tentative trusts* obtains. Re Totten, 179 N. Y. 113, 70 L.R.A. 711, 71 N. E. 748, 1 Ann. Cas. 900; Lattan v. Van Ness, 107 App. Div. 393, 95 N. Y. Supp. 97. If we are to understand that the so-called trust under this doctrine remains revocable until death, at which time it becomes absolute and operates on the property remaining, it would savor too much of a pure testamentary disposition to apply it in a case such as the present. To make the bank a trustee under the facts in the present case would be but to arbitrarily construct for convenience sake a legal relationship not founded upon either the actual or presumed intention of the parties. It would be to resort to a theory in order to achieve a certain result that the party with power to accomplish had mistakenly supposed she had accomplished in some other manner. The trust would be made to compensate for Mrs. Street's mistake of law, if such mistake were made. There is not, in our opinion, any substantial basis for finding that there was any intention to create a trust, and it could not exist otherwise under the facts of this case.

We have set forth in this opinion the cases that seem to us to afford the strongest support to the appellant, and we have indicated some of the reasons why we think the principles of those cases are not applica- able here. It is not to be assumed that there are not numerous author- ities more nearly in point and holding against the contentions of the appellant. Among the many well considered cases supporting our conclusions in the matter are the following:

Main's Appeal, 73 Conn. 638, 48 Atl. 965, in which a mother drew the money standing to her account in a savings bank and redeposited it in three accounts, each in the names of herself and one of her three daughters, she keeping possession of the bank books. It was her inten- tion to keep control of the money during her lifetime and at her death that it should go to the daughters as indicated in the pass book. It was held that this was an attempted testamentary disposition, that it was invalid and that the money should go to the administrator.

In Telford v. Patton, 144 Ill. 611, 33 N. E. 1119, it was held that where money was deposited in a bank in the name of a third person, the deposit book being retained by the depositor, the title to the fund, or the beneficial interest, does not pass to the third person in the absence of a declaration of trust, which must either be specific or be shown by cir- cumstances clearly evidencing such intention.

In Bath Sav. Inst. v. Fogg, 101 Me. 188, 63 Atl. 731, the depositor caused the deposit to be credited on the books of the bank, payable to either her sister or herself. She retained the deposit book, although it was her express wish to have the deposit made upon terms and condi- tions that would operate as a transfer of the fund upon her death. The evidence otherwise showed that there was no intention to relinquish con- trol over the fund during her life and that there was no declaration of trust. The court quoted with approval from 2 Pomeroy's Equity Juris- prudence, § 997, in which the author states that a person holding prop- erty and intending to make a voluntary disposition may do so in either one of three modes; namely: "(1) He may make a simple conveyance or assignment of it directly to the donee, so as to vest in the latter what- ever interest and title the donor has without the intervention of any trust. (2) He may make a transfer of it to a third person upon trusts declared in favor of the donee. (3) He may retain the title, and de- clare himself a trustee for the donee, and thus clothe the donee with the

beneficial estate." The court further quotes the author: "If the donor adopts the second or third mode, he need not use any technical words, or language in express terms creating or declaring a trust, but he must employ language which shows unequivocally an intention on his part to create a trust in a third person or to declare a trust in himself."

Where money is deposited in the names of two persons, payable to either or survivor, and where the book remains in the possession of the depositor until after his death, the other person having no knowledge of the deposit, the money remains the property of the depositor. Noyes v. Institution for Sav. 164 Mass. 583, 49 Am. St. Rep. 484, 42 N. E. 103.

In Taylor v. Henry & Bruscup, 48 Md. 550, 30 Am. Rep. 486, money deposited in a savings bank by one in feeble health to the credit of himself and his mother and survivor, and subject to the order of either, which the depositor subsequently, in the presence of his sister, caused to be changed to himself and his sister, was held to belong to the estate of the depositor and not to the sister. The bank having paid the sister, who had obtained the bank book from the trunk of the deceased depositor, was held liable to the administrator. The court said at page 560:

". . . For the purpose of establishing such trust (a trust of the declarant's own property), however, the evidence must be clear and unmistakable both of the intent and the execution of that intent. . . . There is no reliable evidence of declarations of the deceased, either in writing or by parol, that tends to prove that he designed the money on deposit exclusively for his sister, or that he intended to give her any real interest in the money by inserting her name in the bank-book, apart from the entry itself. . . . His declarations, conduct, and dealing with the subject-matter, all go irresistibly to show that he never did and never intended to part with or surrender his absolute control and dominion over the fund, during life. . . ."

See also Murray v. Cannon, 41 Md. 466.

For similar authorities, see Howard v. Dingley, 122 Me. 5, 118 Atl. 592; Battles v. Millbury Sav. Bank, 250 Mass. 180, 145 N. E. 55; Godwin v. Godwin, 141 Miss. 633, 107 So. 13; Marcy v. Amazeen, 61 N. H. 131, 60 Am. Rep. 320; Towle v. Wood, 60 N. H. 434, 49 Am. Rep. 326; Commercial Trust Co. v. White, 99 N. J. Eq. 119, 132 Atl.

761; Morristown Trust Co. v. Capstick, 90 N. J. Eq. 22, 106 Atl. 391; Smith v. Speer, 34 N. J. Eq. 336; Stevenson v. Earl, 65 N. J. Eq. 721, 103 Am. St. Rep. 790, 55 Atl. 1091, 1 Ann. Cas. 49; Beaver v. Beaver, 117 N. Y. 421, 6 L.R.A. 403, 15 Am. St. Rep. 531, 22 N. E. 940; Eschen v. Steers (C. C. A. 8th) 10 Fed. (2d) 739; Grady v. Sheehan, 256 Pa. 377, 100 Atl. 950; Shortill v. Grannen, 47 N. B. 463, 55 D. L. R. 416, note in 48 A.L.R. 189.

In this opinion we have not attached any significance to the fact that the certificates of deposit were payable in the disjunctive to the depositor or Montague. This is not to be considered as an implied holding that such is an appropriate form for creating a joint tenancy. Morristown Trust Co. v. Capstick, 90 N. J. Eq. 22, 106 Atl. 391.

It follows that the judgment appealed from is right, and it is affirmed.

NUESSLE, CHRISTIANSON, BURR, and BURKE, JJ., concur.