(107 App. Div. 393.)

## LATTAN et al. v. VAN NESS et al.

(Supreme Court, Appellate Division, Second Department.   August 31, 1905.)

TRUSTS—SAVINGS BANK DEPOSITS.

Plaintiffs' father, L., being a spendthrift, requested his father to leave his share of his estate in trust for him, and such share was bequeathed to two of L.'s sisters, who were the executrices, to retain such share until such time as in their opinion L.'s habits warranted a belief that he would care for it, meanwhile paying him interest thereon. He continued to be a spendthrift, and, in order to prevent his wasting his substance, he, in accordance with the custom of his sisters, made several deposits of his property in savings banks in the name of such sisters in trust for plaintiffs. *Held*, that such deposits created tentative, and not irrevocable, trusts during L.'s lifetime, though accompanied by a delivery of the passbook to the trustees.

Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by Emile R. Lattan and others against Adelene Van Ness, individually and as administratrix of Fanny A. Lattan and Angelica Lattan, deceased, and others. From a judgment in favor of plaintiffs (89 N. Y. Supp. 761), defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

B. F. Tracy (George Richards, on the brief), for appellants.
Reuben Leslie Maynard, for respondents.

MILLER, J.   On the 10th day of November, 1884, Louis H. Lattan opened accounts in each of four savings banks in the names of his sisters, Fanny A. Lattan and Angelica Lattan, the defendants' decedents, in trust for the plaintiffs, his children, and on the same day transferred to them in form as such trustees 16 shares of bank stock, and on the 5th day of January, 1885, in like manner transferred to them 20 shares of bank stock.   This action is brought to recover the amount of said deposits and the proceeds of said bank stock, which then amounted to $6,800, and with interest added now amounts to approximately $18,000.   On said November 10th the said Louis H. Lattan also opened a savings bank account of $1,000 in the name of said Angelica Lattan as trustee of said children, and transferred 38 shares of bank stock in form to said Angelica and Fanny as said trustees, and on the 26th day of March, 1885, he opened another savings bank account of $1,200 in his own name as trustee for said children.   The moneys so deposited and the stock so transferred were substantially his share of his father's estate, which, when delivered to him in May, 1884, amounted to $11,936.90, and then comprised his entire estate.   Subsequently, and in the year 1885, he received $4,000 from a judgment recovered against the city of New York, and about $4,500 as his share on the distribution of his mother's estate, and this money was substantially all turned over to said Fanny and Angelica; but it does not appear in what form said transfers were made.   He was concededly a spendthrift, and knew that he could not earn his own living or save his money if

95 N.Y.S.—7

he kept control of it. His father died testate about 1860, making said daughters Fanny and Angelica executrices of his will, and providing that they should retain the share devised and bequeathed to Louis until such time as in their opinion his habits of industry and economy should warrant the belief that he would take care of it, meanwhile paying to him the interest in quarterly payments. He testifies that, at the time of the transfers and deposits which are the subject of this suit, nothing was said between him and his sisters respecting the purpose of the transaction, but immediately thereafter said Fanny and Angelica commenced paying him moneys from the fund thus created, as he called upon them for it, and it is undisputed that when they died—Fanny in March, 1900, and Angelica in April, 1901—the entire proceeds from the bank stock and savings bank accounts involved in this suit had been paid over to him in small payments extending over said period of 16 years, and that during such time the plaintiffs were in entire ignorance of the existence of such accounts. At the time or shortly after the opening of said accounts his wife left him because of his habits, and thereafter and up to the time of her death in 1894 he was subject to an annual charge of $630 for the rent of the house in which she lived.

It clearly appears that from the time of the father's death in 1860 said Fanny and Angelica were the business head of the family, whose prudence and economy were as marked as their brother's improvidence. Their favorite method of conserving the family estate appears to have been its deposit in savings banks, and, in order to avoid the limit placed upon savings bank deposits, many different accounts were opened in their own names, both individually and as trustees for different members of the family; they retaining the pass books and drawing the money as they desired. The effect of one of such deposits has been determined by the Court of Appeals in the Matter of Totten, 179 N. Y. 112, 71 N. E. 748, in which it was held that a deposit by said Fanny A. Lattan in her own name as trustee for the plaintiff Emile R. Lattan did not create an irrevocable trust in his favor, and the rule was declared that:

"A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the pass book or notice to the beneficiary."

The judgment of the court at Special Term in the case at bar was pronounced upon the theory that evidence of a deposit by one person of his own money in the name of another as trustee for a third, followed by a delivery of the pass book to such trustee, conclusively established an irrevocable trust; and, unless such is the rule, this judgment cannot be sustained, because it must be manifest, from the acts of the parties, their methods of transacting business, and all the contemporary circumstances, that said Louis H. Lattan did not intend to create an irrevocable trust, and that none of the parties understood that he had so intended. It is inconceivable that a man

so circumstanced would tie up practically his entire estate by the creation of irrevocable trusts. He may have anticipated at the time the receipt of the moneys which he in fact subsequently received, but these were not sufficient to provide adequate support for himself and family. A careful reading of the record before us leaves no room for doubt that the same purpose actuated him in all the transfers to his said sisters, and that was to put his property beyond the peril of his spendthrift habits, that it might be conserved for the support of himself and family and in the event of his death. belong to his children. In answer to a question as to his purpose in turning all of his property over to his sisters for management, he testified:

"My father said that I never could save a cent of money, and I was of the same opinion, and the consequence was that I told him that when he died to leave me the interest of my money only. I had to put it out of my hands on that account for the future, as I did not know but what I might leave my family destitute. That was the idea of my doing so. There was no other reason. * * * I put it all out of my hands, and then, if I wanted money, I got it. * * * I thought they [referring to his sisters] were honest to give me what was due me."

It is true that he testified that he intended to create irrevocable trusts, and that he understood an irrevocable trust to be "so you cannot transfer it"; but it must not be forgotten that he was testifying in behalf of his children's effort to obtain from his sisters' estates the money, which for a period of 16 years had been treated as his own and paid to him for the support of himself, his wife and presumably these plaintiffs, and, when the statement last quoted is read in connection with the rest of his testimony, it is clear that he intended to create a tentative, and not an irrevocable, trust. And the question is thus presented whether the mere form of the deposits and transfers can conclusively establish an intention, which the evidence unmistakably demonstrates did not exist. Had a formal declaration of trust, clearly expressing its purpose, been executed, a different situation would be presented; but, while a deposit in the name of another as trustee may be less equivocal than a deposit in the name of the depositor, it certainly cannot be said to be so unequivocal as to foreclose explanation, especially in view of the well-known custom of making deposits in the names even of strangers and fictitious persons, and of the rule of the banks, which is in evidence in this case, permitting the holder of the book to draw the money. The said Louis undoubtedly intended his children to have whatever was unexpended, and made the deposits in the names of his sisters, instead of his own, that they might stand between him and his prodigality.

This case is distinguishable from the Totten Case, in that the deposit in the latter was made in the name of the depositor, who retained the bank book; but, if this was not sufficient to create even a presumption of an intention to establish an irrevocable trust, it would seem that the mere deposit in the name of a third person as trustee, though accompanied by a delivery of the pass book to the trustee, was not conclusive.

As the evidence seems to me to compel the conclusion that a tentative, and not an irrevocable, trust was intended, I advise that the judgment be reversed upon the law and the facts, and a new trial granted; costs to abide the final award of costs.

WOODWARD, JENKS, and RICH, JJ., concur. HIRSCHBERG, P. J., dissents.