MANN et al. v. SHRIVE.

(Supreme Court, Appellate Division, Second Department. March 2, 1906.)

1. TRUSTS—EVIDENCE OF EXISTENCE.
    Evidence examined, and *held* to sustain a finding that a transfer of a fund in a bank to the defendant was intended for the benefit of the infant plaintiffs.

2. SAME—EFFECT OF AGREEMENT.
    Though a mere agreement to undertake a trust in the future without compensation is not obligatory, where a donee of a fund accepts it for the benefit of third persons, his undertaking will be sustained.
    [Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, § 11.]

3. SAME—CHARGES AGAINST FUND.
    Where the owner of a fund in a bank gave the bank written instructions to add defendant's name to her book without any restrictions to

enable him to use and pay out the money she then had, or might have in the future, the transfer being intended for the benefit of third persons, the gift was subject to proper charges against it for the benefit of the donor, such as physicians' services and funeral expenses, and the donee is not liable to the beneficiaries for the part of the fund so used.

Appeal from Special Term, Westchester County.

Action by Edward Mann and others, infants, by Arthur D. Lawrence, their guardian ad litem, against George G. Shrive. From an interlocutory judgment in favor of the plaintiffs, defendant appeals. Modified.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

George S. Hamlin, for appellant.

Arthur J. Burns, for respondents.

JENKS, J. During her last illness from a chronic disease, Sarah Baker executed, acknowledged, and delivered this writing to the defendant:

"Yonkers, N. Y., Feb. 8, 1904.

"Yonkers Savings Bank, Yonkers, N. Y.—Gentlemen: I am confined to my bed and too ill to come to the bank. In order that Mr. George G. Shrive may be able to use and pay out the money I now have or may in the future have on deposit with you, I hereby request you to add his name to my book without any restrictions.

"Yours respectfully,　　　　　　　　　　　Sarah J. X Baker."
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　her mark

The attorney who took the acknowledgment showed her the bankbook with this assignment written in it, and said: "This transfers all your money to Mr. George [the defendant's first name]. Is that what you wish to do?" And she answered "Yes." At that time she delivered the bankbook to the defendant. Upon this evidence alone the effect of the transaction was at least to vest in the defendant a joint ownership in the fund, who, if the survivor, would be entitled to it all. Farrelly v. Emigrant Industrial Savings Bank, 92 App. Div. 529, 531, 87 N. Y. Supp. 54, and authorities cited. But in Taylor v. Kelly, 5 Hun, 115, it was held:

"To constitute a gift a manual delivery of the thing given is not necessary. A delivery to a third person as trustee or bailee of the donee is sufficient to pass the title, and the donor may, by an apt declaration to that effect, convert himself into a trustee for the donee."

See, too, Phipard v. Phipard, 55 Hun, 436, 8 N. Y. Supp. 728; Holliday v. Lewis, 14 Hun, 480.

Therefore, a question is presented whether such action was for the benefit of the defendant, or whether he received it as bailee or trustee for the infant children plaintiffs. The Special Term has found that the defendant received and accepted the gift for their benefit, and although the point is made that proof which depends upon admissions is sharply scrutinized, and that evidence to sustain such a finding must be clear and convincing, yet I think that we would not be warranted to disturb this finding upon the facts, within the rule laid down in Lowery v. Erskine, 113 N. Y. 52, 20 N. E. 588; Foster v. Bookwalter, 152 N. Y. 166, 46 N. E. 299; Parfitt v. Ferguson, 3 App. Div. 176, 38 N. Y.

Supp. 466; and City of New York v. Herdje, 68 App. Div. 370, 74 N. Y. Supp. 104. The testimony of Dr. Trotter, the physician of Sarah, is that several days before her death the defendant said to him that she had no relatives; if she died intestate, her money would revert to the state; the Mann children would not get it, and her intention had been that they should receive it. A day or two thereafter he told the witness that Mr. Thayer, an attorney, had been there, and they "had fixed it all right. * * * She had signed a paper, and had the thing legally fixed for the benefit of the Mann children." On cross-examination the witness said that the defendant said Mr. Thayer had been "there, and the thing was all fixed satisfactory," but he was not positive that he mentioned the Mann children; he did not, but "that was understood." Edward Mann, the father of the children, testifies that after the funeral the defendant told him that Judge Thayer had been to the house, and through him he had secured the money to the children of the witness; that the day after the defendant said he had changed his mind about the effects; that Mrs. Mann must not come after them; that he was going to hold them; but that the money was in trust for the children. Later the defendant said the matter was in the surrogate's hands. Mrs. Mann testifies that the defendant talked to her in the presence of his wife. He then said that Sarah had told him that she wanted the money for the three children in his trust, but "she did not have over $500. She must have been liberal with her friends." He said that he had accepted the money, and was going to hold it in trust for the benefit of the children, and through Judge Thayer had obtained it for her children. A few days after the funeral, when she asked if he was "going to come up to his word," he took a paper from his desk, showed it to her, and said: "Everything is to the surrogate; I have nothing to do with it." On the other hand, the defendant denies that he ever told the Manns that Sarah had left her property otherwise than to him, or that he had ever admitted to any one that he held the money in trust. He does admit that he said to Dr. Trotter, before the paper was executed, that it seemed too bad that Sarah could not make her will, and that as it looked now, unless something was done, he would have to pay the funeral expenses; that the Mann children would not get anything, but that the property would go to the state. He testifies that he told Dr. Trotter that it had been satisfactorily arranged, that Judge Thayer had come down, and that it had been transferred to him, but that he said nothing about the trust. He admits that he did "say something" to Mr. Mann "about advancing something to the children, or helping them in some way," and that he understood that "at times" Sarah had wanted to give something to the children or to the church, but finally she desired to give it all to him. The mother of the defendant testifies that Sarah, nearing her end, said she wanted to leave her money to her two boys, and nothing to the Manns or to any other person. Dr. Trotter, recalled, testifies that at the second conversation the defendant did not say anything to the effect that Sarah had given him the money absolutely. Mr. Broughall testifies that the defendant said that Mr. Mann said that defendant owed him (Mr. Mann) money; that whatever Sarah had left would go to her relatives; and that he had sought them down south, as he thought they

needed it more than the Manns, and if Mann had said nothing, Mann could have had a "few hundred dollars." While this is all of the evidence that bears directly on the transaction, other circumstances lighten it up. Minchin v. Merrill, 2 Edw. Ch. 333, 338. Sarah was an old colored spinster, who had been a domestic servant in several families. She had no relatives. The Mann family were of her color, and in apparently the same station in life. When out of service or ill she made her home with them as one of the family, without charge, and was nursed by them in her illnesses. She was the godmother of the three children, and called them her children. She had repeatedly declared, even to her physician, if she left anything she wished it to go to them. A few months prior to her death she had attempted to insure her life for the children, declaring that she was their godmother, that she had no relatives, and she considered it her duty to provide something for them. This declaration was made to the insurance agent in the presence of the defendant. She had told the children that at her death all would go to them. On the other hand, the defendant was far above her, and apparently in good circumstances. She had once lived in his family for many years as a servant, but had gone elsewhere, and had only returned to his service for eight months before she died. There was no unbroken relation of continuous service through which a menial almost merges into a member of the family. On the other hand, she was dying while a servant in his house; it was but natural that an illiterate woman should intrust her money to him as her almoner, and should turn to him to carry out her wishes. While the transaction in its entirety is sufficient to establish a gift, the terms of the written transfer to the defendant are to "use and pay out," which contemplate a disbursement by the recipient, rather than an absolute gift to him. Inasmuch as a lawyer was called in, nothing could have been easier than to employ apt words, that would have settled the terms of the transfer beyond all cavil. There are two significant matters in the defendant's case. Mrs. Mann testifies that the declarations of the defendant were made in the presence of the defendant's wife. That lady was not called as a witness, although there was a continuance of the case, and no explanation of her absence appears. The whole amount of the deposit was $972. On February 10th, the day before Sarah's death, the defendant drew out $400, and during the time intervening the 24th of that month and the ensuing April 2d he drew out the whole deposit. The defendant testifies that the funeral cost $300, and that the casket cost $165. He thereafter denied the correctness of the undertaker's bill when it appeared therefrom that the casket cost $84, but later on, when the undertaker showed that the cost was $84 and the funeral expenses were $165.50, it was admitted that the bill was correct. The mother of the defendant is directly contradicted by Mary Brown, who testifies that the lady said to her that Sarah said when she died she would leave the Mann children something. So far, then, as the Special Term finds that the transfer of the fund to the defendant was for the benefit of these infant children, I think that its determination must be affirmed, and such an undertaking on the part of the defendant can be sustained. In Rutgers v. Lucet, 2 Johns. Cas. 92, the court say (page 95):

"A mere agreement to undertake a trust in futuro without compensation it is true is not obligatory, but when once undertaken, and the trust actually entered upon, the bailee is bound to perform it according to the terms of his agreement. The confidence placed in him and his undertaking to execute the trust raise a sufficient consideration; a contrary doctrine would tend to injure and deceive his employer, who might be unwilling to consent to the bailment on any other terms."

See, too, McKee v. Lamon, 159 U. S. 317, 322, 16 Sup. Ct. 11, 40 L. Ed. 165; Story's Eq. Jur. §§ 1041, 1146.

I think that the transaction must be regarded as a gift of the fund, or so much thereof as might remain after the payment of any proper charges against it for the benefit or on account of Sarah Baker. Any payments which constituted a proper charge against it (for she left nothing else save a few personal effects) cannot, despite their payment therefrom, be charged against the defendant, in order to make whole the amount of the fund at the time of the transfer. The physician's services, the funeral expenses, or any other proper and necessary outlay of like kind could be discharged from the fund; but as to the residue he must account to the infants or to their representatives. I do not think that there was a trust created in the sense that the defendant was to hold the money for the benefit of these infants for any period of time, but that the plain intent of Sarah was to afford a payment to them, or, as they are infants, to their representatives for their benefit.

The judgment is modified in accord with this opinion, and, as modified, affirmed, without costs. All concur.