FRANCIS J. GREELEY, administrator, *vs.* MARY A. O'CONNOR & others.

Suffolk.     April 8, 1936. — June 1, 1936.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Trust,* What constitutes, Validity.  *Gift.*  *Wills, Statute of.*

A finding by a judge of probate, that a transferring by a woman shortly before her death of certain savings bank deposits into the names of herself and another as joint tenants with right of survivorship was not a valid gift *inter vivos* or *causa mortis* but was an attempted testamentary disposition, was reversed, the evidence being *held* to require a finding

that, while the owner retained power of revocation of the transfer and control of the deposits during her life, the transfer was a present and completed transfer in trust for certain specified purposes and was not governed by the statute of wills.

PETITION IN EQUITY, filed in the Probate Court for the county of Suffolk on October 4, 1934.

The petition was heard by *Dillon*, J. From a final decree entered by his order the respondent Mary A. O'Connor appealed.

*D. P. Ranney*, for the respondent O'Connor.

*F. J. White*, (*J. F. Tague* & *F. J. Greeley* with him,) for the petitioner.

PIERCE, J. This petition in equity comes before this court on the appeal of the respondent, Mary A. O'Connor, from the final decree of the Probate Court for the county of Suffolk, ordering her to deliver to the petitioner certain savings bank deposits standing in the joint names of herself and the petitioner's intestate, Annie A. O'Brien, and to account for such deposits in a certain fashion. Mary A. O'Connor will hereafter be referred to as the respondent, since the Providènt Institution for Savings in the Town of Boston and The Boston Five Cents Savings Bank, the other respondents who appeared and answered, are not appellants and are mere stakeholders in this proceeding.

The petition alleged in substance that Annie A. O'Brien (hereinafter called the decedent) died April 29, 1934, owning certain deposits in savings banks approximating $12,000; that she "was suffering from a physical ailment which made her susceptible to influence"; that on April 24, 1934, five days before her death, she made a deposit of $2,600 in The Boston Five Cents Savings Bank "in the names of Annie A. O'Brien and Mary A. O'Connor, as joint tenants with the right of survivorship," with the moneys of the decedent while she "was not of sufficient mental ability" to make the transfer, and that "said transfer of her property was procured by the fraud and undue influence of the said" respondent; that a similar joint deposit of $1,793.80 had been created on April 13, 1934, in the Provident Institution for Savings in the Town

of Boston, under exactly similar circumstances; and that the respondent held savings bank accounts approximating $12,000 belonging to the decedent for which the respondent refused to account. The petition prayed for various injunctions against assignments or transfers of the described accounts, but essentially sought an accounting "for all property placed in . . . [the] possession or custody" of the respondent by the decedent.

In her answer the respondent admitted that certain joint deposits had been made in the banks in question by the decedent with her, with money of the decedent, in different amounts (at different times, however, than was alleged by the petitioner), but denied that such deposits were created because of the respondent's fraud or undue influence upon the decedent, or that the decedent was not of sufficient mental capacity to make a transfer of her deposits. The respondent further denied that she had any property of the decedent in her possession or that she was under any duty to account to the petitioner, and alleged that all savings bank books, records and other papers which belonged to the decedent had been sent to the petitioner by her on August 22, 1934.

A stenographer was appointed to take the evidence. A request for a report of the material facts found by the judge was made by the respondent, and the judge made a report of such facts. The facts thus found are not to be set aside unless the reported evidence shows them to be plainly wrong. *Tewksbury* v. *Tewksbury*, 222 Mass. 595, 596. Most of the facts are not in controversy. Those in dispute, in the main, concern the judge's conclusion of fact that the joint deposits in the named savings banks were an attempted testamentary disposition of a part of the decedent's estate and were therefore void. Warranted by the undisputed evidence, the judge found that the decedent was about fifty-nine years of age at the time of her death on April 29, 1934; that she left as heirs at law a brother and sister, both insane and inmates of an institution under the control of the Massachusetts State department of mental diseases; that the petitioner was appointed administrator on July 12, 1934,

and duly qualified; that the inventory filed by the administrator set the personal estate in the sum of $1,764.46 and showed that the decedent left no real estate; that the respondent had been a friend of the decedent for many years; that they had seen each other at infrequent intervals prior to February, 1934; that shortly before going to the hospital the decedent sent for the respondent; that with the respondent's assistance arrangements were made at the Boston City Hospital for the decedent's hospitalization and medical treatment; that she had great confidence in the respondent and respected her judgment; that a few days before the decedent went to the hospital she gave to the respondent certain books of deposit in the Union Savings Bank of Boston, the Provident Institution for Savings in the Town of Boston, The Boston Five Cents Savings Bank and The First National Bank of Boston, Summer Street Branch, with instructions to put them in a safe deposit box in their joint names; that on April 10, 1934, the respondent was instructed to open joint accounts with the decedent in all of the above named banks where the decedent had deposits; that the respondent carried out these instructions; that the decedent did this in order that the respondent might draw money with which to pay bills and expenses that the decedent knew she would incur during her illness; that shortly after she had been operated on at the hospital the decedent revoked a will she had made by destroying it, for the reason "she was of the opinion that because of the fact that her brother and sister, her only heirs at law, were inmates of a State institution for the insane, 'The will she made would be broken by the State and the State would reach for her money,' and take the proceeds of her estate as payment for their support." The judge further found as follows: "The deceased had a sister Elizabeth who, during her lifetime, gave the deceased to understand that she was extremely poor and had no estate. The deceased was solicitous of her welfare, provided a home for her and assisted greatly in supplying her wants. At the death of said sister, she left an estate valued at about $11,000. The deceased and

her present heirs at law, who were then as now inmates of
a State mental institution, were entitled to a one-third
interest each. The Commonwealth of Massachusetts re-
ceived from the insane heirs the proceeds of their shares
in that estate in payment of their board. The deceased
thought this a great injustice and was extremely disap-
pointed, first, in her sister's lack of confidence in her, and
secondly, in the attitude of the Commonwealth of Massa-
chusetts in taking approximately two thirds of the estate.
The respondent . . . took possession of the said bank
books with the understanding that if the deceased recov-
ered she was to return the bank books to her, and at no
time before the death of the deceased did the respondent
. . . regard the bank books or the moneys represented by
them to be her property. The deceased communicated to
the respondent . . . the fact that she did not think that
her will would be admitted to probate and that she wanted
the respondent to carry out her wishes after her death.
The deceased communicated to the respondent . . . what
her wishes were and in what manner and to whom she
wanted her estate distributed. The respondent took the
said bank books with a clear and definite understanding
that she was to carry out the wishes of the deceased as
to the disposal of her property, and with a further under-
standing that any balance remaining after said distribution
was to be her property. The respondent has set up two
joint accounts in her name and that of persons to whom
she is to distribute according to the desires of the deceased,
but has not actually paid over said moneys because she
anticipated legal proceedings or complaints. The deceased
wanted to get her moneys into the possession of the per-
sons mentioned by her during her sickness through the
medium of the respondent."

The judge on all the evidence found and ruled that "the
transaction had by the deceased with the respondent . . .
in connection with the property of which recovery is sought
in this proceeding by the administrator was an attempted
testamentary disposition, was not a valid gift *inter vivos* or

*causa mortis*, and that the property in question is assets of the estate of the deceased to be administered as such."

The respondent contends that the "report of material facts of the trial judge, although for the most part accurate, is not sufficiently full and clear, and that the entire evidence must be read to supplement such findings in order that this court may say whether the judge's 'Findings and Rulings' . . . are right or wrong." *Plumer* v. *Houghton & Dutton Co.* 277 Mass. 209, 215. *Graustein* v. *Dolan*, 282 Mass. 579, 583. G. L. (Ter. Ed.) c. 214, §§ 23, 24. We think a reading of the entire record warranted and required findings that the decedent had capacity to revoke the will executed at the hospital on March 4, 1934, that she was not unduly influenced by the respondent, that the joint accounts were composed of many items belonging to the decedent, that she had sufficient mental ability to make the transfers of her property, and that no fraud was exercised upon her by the respondent; and that on the testimony of the respondent which was not discredited by the trial judge he should have found as a material fact that the decedent at the time she caused the deposits to be put in the joint names of herself and the respondent, said to the respondent: "I am asking you to do this because I trust you more than anybody in the world and I know what I ask you to do you will do"; and that the decedent said: "I want you to give Ellen Collins $1,000; Mrs. Margaret Goulding $1,000; Helena Griffin $1,000; pay Mr. Powers," — he was the man who served her in the house — "$200; that would be considerable money for Mr. Powers; you give Father Prendergast $2,500; you take charge of my funeral and pay my funeral expenses; I don't want an expensive funeral; I want you to put a headstone on my grave and on my mother's grave and take care of the grave . . . You use your own judgment; you know what I want, but don't spend more than $500 on those two headstones and grave. I want you to send a box of delicacies to Nell and Joe . . . Couple times a month, or once a month . . . No, I don't care about your seeing Joe, you didn't know him, and Nell doesn't know you very well and strangers

always upset her . . . . When Nell and Joe die I want you to see that they get a Christian burial; if you die, I want you to ask Nell Connors and Helena Griffin to see that they get a Christian burial."

It is not denied that the savings bank accounts were transferred by the decedent in such fashion as the banks directed, except one which was not transferred and became assets of the decedent's estate. Nor is it denied that about the time of the transfers the decedent gave full directions to the respondent concerning the respondent's disposition of the deposits, as above more fully stated. Respecting the new accounts the banks would be justified in treating the deposits as funds in which the parties named had joint interests. *Bradford* v. *Eastman*, 229 Mass. 499. As between the decedent and the respondent there was a fully executed trust. *Jones* v. *Old Colony Trust Co.* 251 Mass. 309, 312. That the transfers were made in contemplation of impending death is immaterial. Even a power of revocation is entirely consistent with the creation of a valid trust. *Stone* v. *Hackett*, 12 Gray, 227, 232. The fact that in some of its features the trust which the decedent created looked to a disposition of the property that was the subject of the trust at a time after the death of the decedent did not make the gift in trust invalid because the entire *jus disponendi* was in the decedent. *Batal* v. *Buss*, 293 Mass. 329.

We perceive no answer to the contention of the respondent that the transfers of these accounts and the delivery of the savings bank books, in the circumstances shown by the record, constituted a gift *causa mortis* in trust, which gift was a completed trust and not obnoxious to the statute of wills. *Stratton* v. *Athol Savings Bank*, 213 Mass. 46.

The decree was erroneous and must be reversed, and a decree entered dismissing the bill.

*Ordered accordingly.*