378 P.2d 820

Lucy E. VAUGHAN, as Administratrix of the Estate of John Hobart Vaughan, Deceased, Plaintiff-Appellant,

v.

FIRST FEDERAL SAVINGS & LOAN ASSOCIATION, Boise, Idaho, a corporation, and Ted R. Vaughan, Defendants-Respondents,

and

John Theodore Vaughan, Intervenor-Respondent.

No. 9090.

Supreme Court of Idaho.

Feb. 7, 1963.

Wallis & Churchill, Moffatt, Thomas, Barrett & Blanton, Boise, for appellant.

Ralph R. Breshears, Boise, for respondent First Federal Savings & Loan Ass'n.

Clemons, Skiles & Green, Boise, for respondent Ted R. Vaughan.

Frank E. Chalfant, Sr., Boise, for respondent John T. Vaughan.

On Rehearing

SMITH, Justice.

This appeal is intended to test the correctness of a judgment of the district court adjudging in effect that a savings account which admittedly was the separate property of John Hobart Vaughan, since deceased, belongs to decedent's two surviving children, or whether the estate of the deceased is the owner of the account.

John Hobart Vaughan and Lucy E. Vaughan were married July 3, 1957. Each possessed separate property. Intervenor-respondent John Theodore Vaughan, 23 years of age, and Mischael Dianna Vaughan, 15 years of age, are the adopted and only children of John Hobart Vaughan, but not of Lucy E. Vaughan.

April 22, 1960, John Hobart Vaughan and Lucy E. Vaughan divided their common or community funds. Shortly thereafter, May 19, 1960, Lucy E. Vaughan commenced an action for divorce from her husband. .

May 31, 1960, John Hobart Vaughan added to his separate property savings ac-

count in First Federal Savings & Loan Association, hereinafter referred to as the loan association, in addition to his own name, the name of his brother, Ted R. Vaughan, a defendant-respondent. This he caused to be accomplished by both of them executing a joint account agreement containing the following provisions:

"Below are duly authorized signatures which the Association will recognize in payment of funds or the transaction of other business for our joint account. The joint subscribers whose names are subscribed below agree with each other and with the above Association that the savings hereby subscribed for and all moneys paid or that may hereafter be paid thereon to said Association by any one or more of the undersigned with all accumulations thereon, are and shall be owned by the undersigned jointly with the right of survivorship * * *."

June 8, 1960, while the action for divorce was still pending, John Hobart Vaughan died. Subsequently, appellant Lucy E. Vaughan was appointed administratrix of decedent's estate.

Ted R. Vaughan, shortly after his brother's death, caused the savings account, then in the amount of $11,204.78, to be transferred to his own and sole name, claiming only that he holds the account in trust for the use and benefit of the two children.

Ted R. Vaughan also is the duly appointed guardian of the person and estate of the younger child, Mischael Dianne.

In February, 1961, appellant administratrix brought action against respondents alleging that the money in the savings account is an asset of decedent's estate and sought transfer thereof to the estate.

The loan association by its answer requested judgment decreeing the ownership of the fund and directions to pay it to the adjudged owner.

Respondent Ted R. Vaughan, in answer to the complaint, alleged that John Hobart Vaughan added his, Ted's, name to the savings account "for the purpose of transferring all right, title and interest to said savings account to the defendant [Ted] for the use and benefit, and in trust, for John Theodore Vaughan and Mischael Dianne Vaughan, the son and daughter of said deceased."

Intervenor John Theodore Vaughan, by complaint in intervention, sought recovery of his one-half of the money allegedly so held by Ted R. Vaughan in trust for the use and benefit of himself and his minor sister, decedent's children.

At the conclusion of the trial the trial court found that prior to May 19, 1960, when the divorce action was filed, Lucy E. Vaughan and her then husband John Hobart Vaughan made a division of their

property, each thereafter owning the same as separate property; that on May 31, 1960, John Hobart Vaughan caused the name of Ted R. Vaughan to be added to the savings account in the loan association, and that the two of them executed a joint account agreement, as hereinbefore set out; that John Hobart Vaughan died June 8, 1960, leaving surviving his two children, John Theodore Vaughan and Mischael Dianne Vaughan.

The court then made the following finding:

"That at the time the said account was converted to a joint account, it was understood and agreed between John Hobart Vaughan and Ted R. Vaughan that said account was to be used by Ted R. Vaughan for the benefit of John Hobart Vaughan during his lifetime in case of his physical incapacity, and further that upon his death, Ted R. Vaughan would hold said funds for the use and benefit of John Theodore Vaughan and Mischael Dianne Vaughan, the son and daughter of John Hobart Vaughan."

and the following Conclusion of Law:

"That the said account in The First Federal Savings and Loan Association, Boise, Idaho, was, at the time of the death of John Hobart Vaughan, on June 8, 1960, a joint account in the name of John Hobart Vaughan and Ted R. Vaughan with the right of survivorship and title thereto is now held by the said Ted R. Vaughan, as trustee, for the use and benefit of John Theodore Vaughan and Mischael Dianne Vaughan, the son and daughter of John Hobart Vaughan, deceased."

The court then entered judgment accordingly, from which judgment, appellant perfected this appeal.

Basically appellant's assignments of error attack the validity of the court's findings of fact and conclusions of law, particularly to the effect that Ted R. Vaughan holds the savings account in trust for the two children, and the judgment entered thereon; and the court's failure to find that the savings and loan account belongs to decedent's estate. Appellant asserts insufficiency of the evidence to support such findings and conclusions, and judgment based thereon.

Appellant argues that the evidence fails to show a clear intention on the part of decedent to make a gift in trust, the beneficial interest to go to the children; that the evidence is equally consistent with the proposition that decedent intended only that his brother Ted have access to the savings account in order to provide care for decedent during apprehended ill health; that without the necessary element of intent to create a trust, no trust was created.

The record consists of the deposition of Ted R. Vaughan, affidavits, and interrogatories and answers thereto, obtained pursuant to procedure prescribed by Idaho Rules of Civil Procedure. Appellant's specifications of error, hereinbefore alluded to, require a review of the evidence for the purpose of ascertaining whether it is sufficient to sustain the findings, conclusions and judgment of the trial court.

The testimony of respondent Ted R. Vaughan, on cross-examination by appellant's counsel, at the taking of Vaughan's deposition, appears as follows:

"Q. John was somewhat worried about his health, wasn't he, Ted? A. Yes, he was.

\* \* \* \* \* \*

"Q. He wanted you to be able to draw on the account to take care of him if that was necessary?

"A. Well, he had my name on there and he wanted the children to have that money, you see. \* \* \*.

"Q. And anticipated that if he was ill you would be able to draw on the account?

"A. Draw on the account and take care of him.

\* \* \* \* \* \*

"Q. He didn't give you any specific directions as to what to do with the money? A. No.

\* \* \* \* \* \*

"Q. Did his discussion with you in reference to the money, was that naturally he wanted them to have anything that was left? A. That's right.

\* \* \* \* \* \*

"Q. Had John ever discussed with you prior to the—prior to his and Lucy's separation, adding your name to his account? A. No.

"Q. Then his concern about this came up so far as you know following their separation?

"A. That's right.

"Q. And the fact that if something happened to him at that state there wouldn't be anybody else to take care of the children or the minor child?

"A. Yes.

\* \* \* \* \* \*

"Q. He never at the time he added your name to the account ever told you he was giving the money to you?

"A. Oh, no, no, that money was never intended for me. That was specifically for the kids.

"Q. He didn't give you any instructions as to any specific division of the money? A. No.

"Q. Or any restrictions as to how it was to be used for the kids?

"A. No, nothing like that.

"Q. When he added your name to the account he commented that besides wanting you to be able to help him, if he needed it, that he wanted the money to go to the kids? A. That's right.

\* \* \* \* \* \*

"Q. At the present time, Mr. Vaughan, you claim no interest in the money for yourself?

"A. I have no interest at all. \* \* \*"

Ted R. Vaughan, in response to interrogatories by his counsel, on direct examination testified:

"Q. Now in regard to a question by Mr. Blanton, you said that he [John Hobart Vaughan] specifically told you he wanted that money for the kids?

"A. That's right. \* \* \* He said on many occasions that the money was for the kids. He mentioned that.

"Q. That is over a period of time? A. Yes.

\* \* \* \* \* \*

"Q. Well, was any discussion ever held between you and him about his physical condition, if something physically would happen to him?

\* \* \* \* \* \*

"A. All he said was that, 'If something happens to me why I can get to it and take care of it.'

\* \* \* \* \* \*

"Q. But you heard him talk about the kids?

"A. Yes."

From the affidavit of Mischael Dianne Vaughan it appears that she heard her father state that he desired his property to go equally to his two children, i. e., to her and her brother.

Intervenor John Theodore Vaughan, in answers to interrogatories propounded to him, testified that his Uncle Ted had told him, "My father wanted my sister to have all his property." However, in his deposition, Ted R. Vaughan stated that while he had said something to John, while the latter was in Boise attending his father's funeral, he, Ted, didn't remember whether he mentioned the savings account. John Theodore Vaughan further testified that Lucy E. Vaughan informed him by letter that the savings account in the name of Ted R. Vaughan "was placed in the joint name of your father and Ted R. Vaughan for the purpose of creating a trust."

"In determining the effect of a joint bank account agreement, the determinative consideration is the intent of the depositor, and this is a question for the trier of facts." Idaho First Nat. Bank v. First Nat. Bank of Caldwell, 81 Idaho 285, 293, 340 P.2d 1094.

The finding of the trial court recognized the intent of the decedent Vaughan as to the disposition of his savings account, i. e., that it be used during his lifetime for his own benefit in case of physical incapacity, and that, upon his death, the account or remainder thereof be held in trust by his brother Ted for the use and benefit of decedent's two children. The findings recognize the theory of a tentative trust existing during decedent's lifetime to, and which did, become an irrevocable trust upon decedent's death.

89 C.J.S. Trusts § 54, p. 816, discusses the so-called tentative or Totten trust in respect to savings accounts and bank deposits as follows:

"The rule as frequently stated with respect to such deposits is that a deposit made by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during his lifetime, but is a tentative trust merely, revocable at will, until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary.

"Unless set aside for fraud or incompetency, the trust becomes absolute and irrevocable on the death of the depositor before the beneficiary without revocation or some decisive act or declaration of disaffirmance, and entitles the beneficiary to the balance remaining at the time of the depositor's death, but not to anything more than such balance. In the event, however, of the prior death of the beneficiary his interest in the account ceases and the fund becomes the absolute property of the depositor, free from the trust. According to some cases, a tentative trust may be made absolute or irrevocable only by one or the other of the two methods above indicated, that is, by the death of the depositor before the beneficiary without revocation or by some unequivocal act or declaration of the depositor during his lifetime. * * * Whether the trust is tentative or irrevocable depends on the intention of the depositor or donor, determinable as a question of fact, in view of established legal principles."

In re Totten, 179 N.Y. 112, 71 N.E. 748, 70 L.R.A. 711, the New York Court of Appeals enunciated the rule as regards a deposit made by a depositor with the addition of "trustee for" some person named, as follows:

"A deposit by one person of his own money in his own name as trustee for another, standing alone, does not establish an irrevocable trust during the lifetime of the depositor. It is a tentative trust merely, revocable at will,

until the depositor dies or completes the gift in his lifetime by some unequivocal act or declaration, such as delivery of the passbook or notice to the beneficiary. In case the depositor dies before the beneficiary without revocation, or some decisive act or declaration of disaffirmance, the presumption arises that an absolute trust was created as to the balance on hand at the death of the depositor."

New York continues to adhere to the doctrine of tentative trust. Many other jurisdictions also have accepted it. See citations 89 C.J.S. Trusts § 54 d, p. 815 et seq. relating to tentative trusts.

The fact situation in In re Totten, supra, can be distinguished from the case under consideration. In the Totten case, the depositor named herself as trustee for the named beneficiary. In the case here, the depositor John Hobart Vaughan in effect designated his brother Ted as the trustee. In Lattan v. VanNess, 107 App.Div. 393, 95 N.Y.S. 97, Louis H. Lattan deposited money in savings accounts in the names of his sisters in trust for his children, the plaintiffs. The Court said:

"This case is distinguishable from the Totten Case, in that the deposit in the latter was made in the name of the depositor, who retained the bank book; but, if this was not sufficient to create even a presumption of an intention to establish an irrevocable trust, it would seem that the mere deposit in the name of a third person as trustee, though accompanied by a delivery of the pass book to the trustee, was not conclusive. As the evidence seems to me to compel the conclusion that a tentative, and not an irrevocable, trust was intended, I advise that the judgment be reversed upon the law and the facts, and a new trial granted."

In Davenport (as administrator) v. Davenport Foundation, 36 Cal.2d 67, 222 P.2d 11, (prior opinion (Cal.App.) 215 P.2d 467), the depositor Levi M. Davenport placed funds from a personal bank account with a Mr. Steinour. He issued a directive that the joint account should be held in trust for the benefit of persons named should they be in special need. Plaintiffs contended that no trust was created because Davenport did not intend a trust to arise until after his death; that he "merely appointed Steinour his agent to carry out his wishes after his death." Plaintiffs alleged that the use of the future tense in the directive showed that no trust was created at the time of its execution. The Court said:

"There was substantial evidence, however, to support an inference that by opening the joint account Davenport effectively created the trust. He had expressed his wish that the Foundation should immediately become the

trustee. * * * The use of the future tense in the directive is not inconsistent with the present creation of a trust by which Steinour was trustee. * * * the trial court was justified in concluding that a trust arose when the joint bank account was opened." 222 P.2d 18.

Other cases wherein trusts were created in co-owners of savings accounts for the benefit of third persons, and the validity thereof upheld are: Greeley v. O'Connor, 294 Mass. 527, 2 N.E.2d 471; Mann v. Shrive, 111 App.Div. 452, 97 N.Y.S. 688; Jarkieh v. Badagliacco, (Cal.App.), 170 P. 2d 994.

New Hampshire, while not recognizing the tentative trust, recognizes its acceptance in other jurisdictions. See Packard v. Foster, 95 N.H. 47, 56 A.2d 925.

An agreement that a bank and trust company should hold deposits in savings account in trust for the depositor during his lifetime and at his death for his sister constituted a "trust," notwithstanding the existence of the debtor-creditor relationship between the parties. Bank of America Nat. Trust & Sav. Ass'n v. Hazelbud, 21 Cal.App.2d 109, 68 P.2d 385, citing Booth v. Oakland Bank of Savings, 122 Cal. 19, 54 P. 370, for the proposition that the depositor's intention at the time of making the deposits is controlling in determining wheth-

er a trust was created; see also Wilder v. Howard, 188 Ga. 426, 4 S.E.2d 199.

Appellant asserts that Ted R. Vaughan's failure to tell decedent's children that he, Ted, held the savings account in trust, and his transfer, after decedent's death, of the account to his own name without showing a fiduciary relationship, indicates that decedent never intended to create a trust.

■ While notice to a beneficiary is not essential to the creation of a trust, Restatement of the Law, 2nd, Trusts 2d, § 36, the record does disclose that Lucy E. Vaughan, during October 1960, imparted her knowledge to John Theodore Vaughan, that decedent placed Ted's name on the savings account for the purpose of creating a trust.

Appellant asserts that respondent Ted R. Vaughan by his own testimony showed that decedent never thought about or intended to create a trust. She argues that decedent didn't give directions to his brother as to what was to be done with the money; that decedent had had the experience of caring for his mother through a joint account; that when decedent and Ted went to the bank to add Ted's name to the account, decedent declared, "This is my money and I am doing this so if something happens to me it will not be tied up," and "I am having his name, my brother Ted put his name on it too. Just in case something should happen it will not tie up the account for use;"

that decedent was concerned about his own health at the time he added Ted's name to the account, and felt he might need care for himself.

Ted R. Vaughan's statements, to which appellant refers, cannot be considered alone, but must be considered, and the trial court did consider them in connection with all of Ted's testimony, as to whether it is indicative of a clear intention on decedent's part to create a trust. As examples, appellant by her cross-examination of Ted, developed decedent's *discussions* with Ted to the effect that decedent wanted the children to have anything that was left in the savings account, assuming the possibility of the use of some of it in caring for decedent; also appellant, by such cross-examination, developed the fact that decedent had *commented* that besides wanting help if he needed it, "he wanted the money to go to the kids;" also, the fact that Ted claimed no interest in the account but held it only "for the kids."

█ If there exists in the mind of a depositor an intention that he or some other person shall be a trustee and he expresses that intent although the words "in trust" or "trustee" are not used, his intention will prevail and the trust will be declared to have been created. Bierau v. Bohemian Building, Loan & Savings Ass'n, 205 Md.

456, 109 A.2d 120. See 89 C.J.S. Trusts § 42a, p. 770.

█ We are aware of the rule that a trust must be proven by clear and satisfactory, or clear and convincing evidence. McGuire v. Hansen, 48 Idaho 34, 279 P. 413; Aker v. Aker, 52 Idaho 713, 20 P.2d 796, appeal dismissed and cert. denied, 290 U.S. 587, 54 S.Ct. 80, 78 L.Ed. 518; Thomas v. Thomas, 83 Idaho 86, 357 P.2d 935; 89 C.J.S. Trusts § 71, p. 853. Here the record discloses evidence substantial in nature upon which the trial court based its findings and conclusions that, upon the death of John Hobart Vaughan, his brother Ted would hold the account or remainder thereof in trust for the use and benefit of decedent's two children. Whether the evidence is clear and convincing as regards the establishment of the trust was a question for determination by the trial court in the first instance. In re Alberts' Estate, 38 Cal.App. 42, 100 P.2d 538; "Ordinarily, it is a question of fact for the trial court to determine", Fritz v. Thompson (Cal.App.), 271 P.2d 205, 210. We entertain the view that the trial court correctly resolved such issue.

The judgment of the district court is affirmed. Costs to respondents.

KNUDSON, C. J., and McQUADE, McFADDEN and TAYLOR, JJ., concur.